[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDINGS ON PETITION FOR TERMINATION OF PARENTAL RIGHTS
The Department of Children and Families (DCF) has filed petitions to terminate parental rights with respect to two children, William W (a a Corey 3.), born January 1987, and Zachary K., born May 1996. The mother of both children is Melanie B., born August 30, 1963. Charles W. is the father or William W. James K. is the father of Zachary K. Both fathers were previously defaulted by the court. The trial of the petitions was scheduled for January 4, 2001. All three respondents failed to appear. CT Page 402 The court proceeded to hear the testimony of the DCF social worker, take judicial notice of certain documents on one file and receive exhibits submitted by DCF. Thereafter, DCF rested. No other party adduced evidence.
 I
General Statutes § 17a-112 provides that unless a parent consents to the termination of parental rights, the court may grant a petition filed for such relief if it finds by clear and convincing evidence (1) that one or more statutory grounds for termination of parental rights exists, (2) that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110
or section 17a-111b that such efforts are not appropriate," and (3) that termination is in the best interest of the child.
"Termination of parental rights means the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents. . . . General Statutes § 45a-707 (3). Termination of parental rights is `a most serious and sensitive judicial action. . . . Since termination of parental rights is the ultimate interference by the state with the natural rights of parents in their children, resulting in everlasting severance of the legal relationship, and usually the permanent separation of parent and child as well, courts must require strict adherence to the statutory standards." (Citations omitted; internal quotation marks omitted.) In reSteve N., 57 Conn. App. 629, 632, ___ A.2d ___ (2000).
"In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and, in fact, usually dictate the outcome, in termination proceedings the statutory criteria must be met before termination can be accomplished and adoption proceedings can begin. No all-encompassing best interests standard vitiates the requirement of compliance with the statutory criteria. . . ." (Internal quotation marks omitted.) In re Antonio M., 56 Conn. App. 534, 533, 744 A.2d 915 (2000).
"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional CT Page 403 phase, the trial court determines whether termination is in the best interests of the child . . ." (Internal quotation marks omitted.) In reJohn G., 56 Conn. App. 12, 17, 740 A.2d 496 (1999). For purposes of fixing the adjudicatory date, the court finds that the petitions were filed on April 8, 1999.
 II
DCF's involvement with the respondent mother dates to February, 1991. Over the years, William has been removed from the mother's home four times. Zachary has been removed twice. On May 30, 1995, DCF invoked a 96. hour hold on William. On June 1, 1995, DCF obtained an order of temporary custody (OTC). On June 9, 1995, the OTC was vacated. On July 1, 1995, William was adjudicated neglected, with a disposition of protective supervision.
On November 21, 1995, DCF again invoked a 96 hour hold over William and thereafter obtained an OTC. The OTC was sustained and the court ordered protective supervision. That order expired on February 5, 1997.
On October 7, 1997, DCF invoked a 96 hour hold on behalf of both children. On October 10, 1997, DCF filed neglect petitions and obtained OTCs for both children. The OTCs were sustained on October 17, 1997. On January 23, 1998, both children were adjudicated neglected. The court ordered protective supervision. In May, 1998, however, DCF again invoked a 96 hour hold on the children's behalf and subsequently obtained an OTC, which was sustained in court. On September 2, 1998, the court modified the disposition of both children to a commitment to DCF.
 III A. Respondent Mother
With respect to the respondent mother, DCF alleges grounds General Statutes § 17a-112 (c)(A) (abandonment), § 17a-112 (c)(B) (failure to rehabilitate) and § 17a-112 (c)(C). At trial, DCF abandoned its claim with respect to § 17a-112 (c)(C).[1]
 1.
"Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . Attempts to achieve contact with a child, telephone calls, the sending CT Page 404 of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Section 17a-112
(b)(1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child." (Internal quotation marks omitted.) In re Terrance C., 58 Conn. App. 389,394, ___ A.2d ___ (2000).
"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . ." (Internal quotation marks omitted.) In re John G., 56 Conn. App. 12,21, 740 A.2d 496 (1999).
The evidence is that, prior to the adjudicatory date, the respondent mother was fairly consistent in visiting her children, during which she expressed and exhibited her love for them and was concerned about their well-being. Her interest in them also was manifested in her attending parenting classes and counseling. The respondent mother's inability to provide material goods for them was a product of her impoverishment brought on by her drug use and related problems. DCF has failed to prove this ground by clear and convincing evidence.
 2.
General Statutes § 17a-112 (c)(B) provides that the court may terminate the parental rights of "the parent of a child who. has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . and such parent has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . ."
"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112 (c)(3)(B)] requires parental rights to be terminated if by clear and convincing evidence it is established that the respondent's level of rehabilitation falls short of the level which would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position [in the life of the child]. . . . Thus the statute requires the trial court to analyze the respondent's rehabilitative CT Page 405 status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) In re Amy H., 56 Conn. App. 55,59-60, 742 A.2d 372 (1999).
As observed supra, both children have been adjudicated neglected. The respondent mother has an extensive history of drug abuse and domestic violence. On September 2, 1998, the court issued expectations with respect to the mother. As discussed infra, under "Mandatory Findings," she has not adequately complied with those expectations. The court finds by clear and convincing evidence that the respondent mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the lives of either child.
 B. Charles W., Father of William W.
DCF alleges that Charles W., father of William W., has failed to be rehabilitated, has abandoned his son and that there is no on-going parent-child relationship between Mr. Wilson and his son.
On October 17, 1997, Mr. Wilson was given specific steps by the court (Holden, J.) to facilitate the return of his son. Those steps are detailed in the mandatory findings, infra. Mr. W. has never contacted DCF since the removal of his son on May 21, 1998 and does not provide him with emotional support. He has never attended any court hearings with respect to his son. Mr. W.'s whereabouts were unknown between May 21, 1998 and February 24, 1999.
In 1995, Mr. W. married another woman and has one daughter by her. Apparently for this reason, he does not want any contact with the respondent mother or with his son. He has stated that he cannot be a resource for William.
While W. may have made child support payments to the respondent mother, he has failed to manifest any other indicia of interest, concern or responsibility for the welfare of his son. The Court finds by clear and convincing evidence that he has abandoned his son.
DCF further alleges, pursuant to General Statutes § 17a-112 (c)(D) that between Mr. W. and his son "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, CT Page 406 emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . ."
"It is reasonable to read the language of no ongoing parent-child relationship to contemplate a situation in which, regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitively lost that relationship, so that despite its former existence it has now been completely displaced. . . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are ofparamount importance. . . . The ultimate question is whether the child hasno present memories or feelings for the natural parent. . . . Feelingsfor the natural parent connotes feelings of a positive nature only." (Citations omitted; emphasis added; internal quotation marks omitted.) Inre John G., supra, 56 Conn. App. 22.
The only evidence as to this ground are two sentences in the social study: "William W. has not been in contact with his father, Charles W. since February of 1996. William W. has never requested the Department contact Mr. W. for the purpose of setting up visitation." The court finds that DCF has not proven lack of ongoing parent-child relationship by clear and convincing evidence.
The court does find by clear and convincing evidence that Mr. W. has abandoned his son and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of William. he could assume a responsible position in the lives of his son.
 C. James K., Father of Zachary K.
The sole ground for termination alleged against James K. is failure to rehabilitate. Mr. K. has an extensive substance abuse history and domestic violence issues relating to the respondent mother. On September 2, 1998, the court issued expectations to Mr. K. with which he has not adequately complied. According to the DCF social study, he is actively involved in treatment at Morris Foundation. He has not become involved in parenting classes, anger management related to domestic violence, or individual counseling. He does visit his son when possible. He has been partially compliant with visitation. He minimizes his substance abuse, domestic violence and his responsibility for the removal of his son from the home. He has been advised to become involved in couples counseling CT Page 407 with the respondent mother. He had not done so as of the adjudicatory date. Mr. K. has stated that he is unable to be a resource placement for his son.
By clear and convincing evidence the court finds that James K. has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of Zachary, he could assume a responsible position in the lives of his son.
 IV Mandatory Findings[2] 1. Finding regarding the timeliness, nature and extent of servicesoffered, provided, and made available to the parent and the child by achild-placing agency to facilitate the reunion of the child with theparent.
 a. Respondent Mother
DCF timely offered the respondent mother the following services at Morris Foundation: substance abuse evaluation, random drug screens, AA meetings, substance abuse treatment, and aftercare. DCF offered the following services at St. Joseph's Center: substance abuse evaluation, random drug screens and treatment; at Carnes Weeks DCF offered residential substance abuse treatment; at Community Solutions, DCF offered alternative to incarceration, random drug screens, group therapy, treatment, and women's groups; at Family Services family counseling was offered; at the Mirian Center, individual counseling was offered; at Family Ties, anger management, stress management, heal support groups and parenting classes were offered. At Women's Emergency Shelter, domestic violence counseling and shelter were offered. She also was offered a parent aide, visitation and, at Women's Sexual Assault Crisis Shelter, individual counseling.
 b. Charles W.
DCF timely offered Mr. W. family counseling and visitation at Naugatuck Family Services.
 c. James K.
DCF timely offered Mr. K. substance abuse evaluation, random drug screens, AA meetings and treatment at the Morris Foundation. At Family services he was offered individual and family counseling. At Family Ties CT Page 408 he was offered parenting classes, stress management, anger management. He was also offered a parent aide and visitation.
2. Finding regarding whether DCF has made reasonable efforts to reunitethe family pursuant to the Federal Child Welfare Act of 1980, asamended.
The court has previously found, and finds again here, by clear and convincing evidence that DCF made reasonable efforts to reunite the family, as evidenced by the foregoing services and diligent efforts to locate respondent K.
3. Finding regarding the terms of any applicable court order enteredinto and agreed upon by any individual or child-placing agency and theparent, and the extent to which. all parties have fulfilled theirobligations under such order.
 a. Respondent Mother
In 1995, 1997 and again on January 23, 1998, the mother was issued similar expectations by the court. The January 23, 1998 expectations required the mother to: Keep all appointments set by or with DCF, keep whereabouts known to DCF or your attorney; participate in counseling, including domestic violence counseling and women's support groups and aftercare at the Morris Foundation, and follow their recommendations; cooperate with the parent aide; secure and maintain adequate housing and income; do not engage in substance abuse; have no involvement with the criminal justice system; submit to random drug screens and sign releases for court and DCF use after review and consultation with an attorney.
On the positive side, the respondent is active in Family Ties for parenting classes, stress management, and anger management. She also is involved with Family Services for family counseling and is working with an individual from the Sexual Assault Crisis Center on a consistent basis. She has been consistent with visitation and has complied with parenting classes and counseling.
However, she has continued with drug use, testing positive for cocaine during her 1999 pregnancy. She has not adequately complied with drug and alcohol evaluations and recommendations. The respondent was negatively discharged from Community Solutions on December 12, 1998 and was sentenced to Waterbury Treatment Center. There, her attitude was hostile to the personnel.
The respondent mother was arrested for violation of probation in January, 1998. She has failed to maintain adequate housing and income. CT Page 409
 b. Respondent W.
On October 17, 1997, respondent Charles W. was given the following specific steps: keep all appointments set by or with DCF; keep whereabouts know to DCF and your attorney, and contact DCF; visit your child as often as DCF permits; participate in drug and alcohol evaluation and follow recommendations; cooperate with random drug screens or tests; sign releases authorizing DCF to communicate with service providers to monitor attendance, cooperation and progress; secure and maintain adequate housing and legal income; do not engage in substance abuse; have no involvement with the criminal justice system; participate in domestic violence counseling.
Mr. W. has not kept his whereabouts known to DCF and his whereabouts have been unknown for long periods of time. He has not visited his child. He has not participated with drug and alcohol evaluation and treatment, and has continued substance abuse; he has not maintained adequate housing and income; he has not signed releases.
 c. James K.
On September 2, 1998, James K. was issued the following expectations by the court: keep all appointments set by or with DCF; keep whereabouts know to DCF and your attorney; visit your child as often as DCF permits; participate in parenting and individual counseling; participate in drug and alcohol evaluation and follow recommendations; submit to random drug screens; sign releases as requested for DCF and court use; secure and maintain adequate housing and income; do not engage in substance abuse; have no involvement with the criminal justice system.
Mr. K. started visitation on September 14, 1998 but has not been consistent. He had no involvement with the criminal justice system between the date of the expectations and the adjudicatory date. He secured stable housing and attended substance abuse evaluations and random drug screens. He has otherwise not complied with the expectations.
4. Finding regarding the feelings and emotional ties of the child withrespect to the child's parents, any guardian of the child's person andany person who has exercised physical care, custody or control of thechild for at least one year and with whom the child has developedsignificant emotional ties.
William's feelings cannot be precisely gauged. He does not volunteer emotion when his mother visits him. Rather, his mother must initiate CT Page 410 contact and has to tell him to kiss her.
William has not had contact with his father since February, 1996 and has never requested visitation with him.
There is insufficient evidence on which to make a finding regarding Zachary's feelings about his biological parents, except that they are not strong and are confused.
William appears to be comfortable in his current foster home. Although he has been there since August, 1998, it is his seventh foster placement. He is not communicative with his foster parents about his feelings.
Zachary bonded quickly to his foster parents, with whom he was placed in August, 1998.
5. Finding regarding the age of the child.
William is nearly 14. Zachary is 4 1/2.
6. Finding regarding the efforts the parent has made to adjust suchparent's circumstances, conduct or conditions to make it in the bestinterest of the child to return the child to the parent's home in theforeseeable future, including, but not limited to: (A) the extent towhich the parent has maintained contact with the child as part of aneffort to reunite the child with the parent; provided the court may giveweight to incidental visitations, communications or contributions, and(B) the maintenance of regular contact or communication with the guardianor other custodian of he child.
Neither father has made a substantial effort to adjust his circumstances, conduct or conditions to make it in the best interest of his son to return to him. The respondent mother has made some, but wholly inadequate efforts other than visiting her children. As observed supra, she remains an active drug user and is unstable in her behavior and housing.
7. Finding regarding the extent to which a parent has been preventedfrom maintaining a meaningful relationship with the child by theunreasonable act or conduct of the other parent of the child, or theunreasonable act of any other person or by the economic circumstances ofthe parent.
There is no evidence that any parent has been prevented from maintaining a meaningful relationship with his or her child by the CT Page 411 unreasonable act or conduct of another parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent.
 V Disposition
"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in § 17a-112 (d)." In reTyscheicka H., 61 Conn. App. 19, 26, ___ A.2d ___ (2000).
In addition to the foregoing findings, the court makes the following findings. Both children are doing well in their foster placements. William is achieving average grades in school in mainstream classes. He has had minor behavior problems that have been addressed.
Zachary is healthy. When he was younger he had slight delays in the areas of fine motor skills and language but no remedial recommendations were made.
Between April, 1999 and October 27, 1999, the mother was inconsistent with her visitation. She has not visited with the children since October 27, 1999. Nor has she telephoned them or sent them cards or gifts. In December, 1999, DCF terminated her visitation.
Since the filing of the petitions, DCF continued to offer services to the respondent mother and respondent James K. Mother has not kept her whereabouts known to DCF, has not complied with parenting classes, has not complied with individual counseling and has not been consistent with random drug screens. She has continued to be an active drug abuser. In 1999, she gave birth out of wedlock to twins. Those infants were removed from her care in September, 1999. On May 5, 1999, she was arrested for use of drug paraphernalia. She bonded herself out and admitted herself to St. Mary's Psychiatric unit. On June 4, 2000, the respondent mother was arrested for breach of peace and resisting arrest. The court has issued a warrant for her violation of probation.
The respondent James K. continues to be noncompliant with the expectations issued to him. He has not kept his whereabouts known to DCF. He has not complied with parenting classes. He has not complied with substance abuse treatment, and has been noncompliant with the Probation CT Page 412 Department.
On May 2, 2000, DCF approved the children's placement as a pre-adoptive home.
By clear and convincing evidence, the court finds that it is in the children's best interests that their parents' parental rights be and they are hereby terminated.
 VI
The petition to terminate parental rights with respect to William W. (a/k/a Corey B.) is granted as to the mother Melanie B. and the father Charles W. The petition to terminate parental rights with respect to Zachary K. is granted as to the mother Melanie B. and the father James K. It is further ordered that the Commissioner of the Department of Children and Families is appointed statutory parent for William W. and Zachary K. for the purpose of securing a permanent adoptive family for them. If the foster parents, are willing to adopt they children, as represented by DCF, it is the court's order that the foster parents receive first consideration. The commissioner shall file with this court no later than 90 days following the date of this judgment a written report of efforts undertaken to effect such a permanent placement for both children and shall file further reports as are required by state and federal law.
Dated at Middletown this 5th day of January, 2001.
 BY THE COURT
Bruce L. Levin Judge of the Superior Court