

# IN RE JOHN G.*
## (AC 17965)

Lavery, Landau and Dupont, Js.

Argued September 22—officially released November 30, 1999

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David B. Rozwaski*, for the appellant (respondent mother).

*Denise Lillo Vecchio*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Stephen G. Vitelli*, assistant attorneys general, for the appellee (petitioner).

*Mary Ann Barile*, for the minor child.

*Opinion*

DUPONT, J. The respondent mother[1] appeals from the judgment of the trial court terminating her parental rights with respect to her child, John G. On appeal, the respondent claims that the trial court improperly found that (1) she failed to achieve sufficient personal rehabilitation, (2) she abandoned John, (3) no ongoing parent-child relationship existed between her and John for more than one year and (4) termination of her parental rights was in the best interest of John. We affirm the judgment of the trial court.

In a comprehensive memorandum of decision, dated November 14, 1997, the court found the following facts. John was born prematurely on July 15, 1984, and experienced oxygen deprivation and a cerebral hemorrhage at birth. Due to his premature birth and multiple medical problems, he was hospitalized continuously for several months following his birth.

Following his discharge from the hospital on October 5, 1984, John was immediately placed in licensed foster care after the petitioner, the commissioner of children and families (commissioner), obtained an order of temporary custody. It was alleged that the respondent was living under conditions detrimental to John's health and

---

[1] The respondent father did not appear at trial and has not appealed from the trial court's judgment terminating his parental rights with respect to John. We refer in this opinion to the respondent mother as the respondent.

inappropriate for his proper care, given his medical condition. On that same date, the commissioner filed a neglect petition with respect to John. On February 21, 1985, the petition was granted, and John was committed to the care of the commissioner for a period not to exceed eighteen months. The commitment was thereafter extended.[2]

John has multiple disabilities and is mentally challenged. He is paralyzed in both legs, requires extensive services and was diagnosed as suffering from cerebral palsy in October, 1985. The respondent consistently visited John for the first year he was in placement. Her visitation decreased markedly after John was diagnosed with cerebral palsy.

The respondent was encouraged to go to the child's rehabilitation center to learn about his needs and the exercises that he would need to perform while he was in her care. The respondent was also asked to address concerns about the physical condition in the home where she was residing, including the frequent lack of heat, since John's medical problems made him suscepti-

[2] On May 9, 1991, the commissioner filed a second neglect petition concerning John after the child's original commitment was inadvertently permitted to expire before a further extension was sought. John was again adjudicated a neglected child and committed to the custody of the commissioner on June 5, 1991. Extension of commitment petitions were subsequently filed. After the present termination petition was filed and the proceedings began but before the termination trial had ended, John's commitment expired. The commissioner requested and received an ex parte order of temporary custody and filed new neglect and uncared for petitions. Counsel for the respondent filed a motion to dismiss claiming that the expiration of commitment while the termination trial was in progress deprived the court of subject matter jurisdiction. The court, relying on General Statutes § 17a-112 (a), General Statutes (Rev. to 1995) § 46b-129 (e), as amended by Public Acts 1995, No. 95-238, § 4, and *In re Corey E.*, 40 Conn. App. 366, 369, 671 A.2d 396 (1996), denied the respondent's motion. The respondent has not alleged on appeal any impropriety concerning the court's decision denying her motion to dismiss. We note, however, that subject matter jurisdiction does exist because the court does have the power to hear and decide cases of this type. See *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

ble to pneumonia. A visitation plan was devised whereby the respondent could have contact with her son three times each week. The department of children and families (department) provided her with a bus pass, and there was evidence that she did not live far away from her son.

Despite the foregoing, the respondent's visits with John were sporadic. Her last visit occurred during 1994 or 1995. According to the respondent's own testimony, she visited John on a total of sixteen occasions between July, 1989, and February, 1996, when the present termination petition was filed. She could have visited John twelve times each month during that period. Furthermore, the respondent did not obtain housing accessible to persons with disabilities such as John's, which would have enabled John to visit the respondent at her home.

For approximately ten years, John lived with a foster parent who has since died. In 1994, he was relocated to a specialized foster home operated by a pediatric nurse, where he currently resides.

On February 5, 1996, the commissioner filed the present termination of parental rights petition with respect to John.[3] The petition initially alleged four grounds for termination: abandonment; parental failure to achieve rehabilitation; lack of ongoing parent-child relationship; and denial by acts of commission or omission of necessary care, guidance or control. The commissioner subsequently withdrew the allegations of denial of necessary care, guidance or control at the conclusion of trial. The trial began on November 4, 1996, and continued on various dates over a period of approximately seven months. The petitioner placed twenty-seven exhibits into evidence and offered testimony from nine witnesses, including a court-appointed psychologist.

[3] The commissioner previously filed a termination of parental rights petition on December 14, 1987, which was withdrawn on July 17, 1989.

The respondent testified on her own behalf but did not offer documentary evidence. Counsel for the minor child participated in the proceedings but did not offer evidence or testimony.

The court found that the commissioner had proven all three statutory grounds for termination by clear and convincing evidence and that termination was in John's best interest. The court rendered judgment terminating the respondent's parental rights on November 14, 1997. This appeal followed.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991) . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [181 Conn. 217, 222, 435 A.2d 24 (1980)]; nor do we retry the case or upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . . *In re Danuael D.*, 51 Conn. App. 829, 836–37, 724 A.2d 546 (1999); *In re Roshawn R.*, 51 Conn. App. 44, 51–52, 720 A.2d 1112 (1998)." (Internal quotation marks omitted.) *In re Denzel A.*, 53 Conn. App. 827, 831–32, 733 A.2d 298 (1999).

I

The respondent first claims that the trial court improperly concluded that she had failed to achieve sufficient personal rehabilitation. We do not agree.

Pursuant to General Statutes (Rev. to 1995) § 17a-112 (b) (2), now § 17a-112 (c) (3) (B), a trial court may terminate parental rights when the parent "has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, [the] parent could assume a responsible position in the life of the child . . . ." " 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). The statute does not "require the parent to be able to assume full responsibility for a child, without the use of available support programs." Id. "Our Supreme Court has held that § [17a-112] (b) (2) [now § 17a-112 (c)(3)(B)] requires the trial court to analyze the respon-

dent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . A determination by the trial court under § [17a-112] (b) (2) [now § 17a-112 (c)(3)(B)] that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Danuael D.*, supra, 51 Conn. App. 837–38; see also *In re Eden F.*, 250 Conn. 674, 706, 741 A.2d 873 (1999).

In this case, there was ample evidence to support the court's finding of failure to achieve rehabilitation. Throughout John's thirteen years in foster care, the respondent was offered visitation, transportation and a psychiatric evaluation. The court found that despite the efforts made by the department at reunification, the respondent visited her child only minimally during the past decade and not at all since John entered his present foster home in August, 1994. The respondent failed to obtain housing that was accessible to John, she participated in John's therapy at the rehabilitation center on a sporadic basis, and there was no evidence that she ever learned the exercises required for his cerebral palsy condition. Furthermore, the respondent failed to remedy the physical conditions in her home that were adverse to John's well-being.

The respondent challenges the court's conclusions by pointing to her own testimony. Specifically, she testified that she tried to learn about her son's disabilities but was harassed by social workers at the rehabilitation center, that she attempted on a number of occasions to see her son at school and at the rehabilitation center but was often told to wait in separate rooms so as not to disrupt John's therapy or was unable to make arrangements with department workers, that she was distrustful of the department, that she tried to give gifts

to John but did not do so because they had to go through the department first, and that she failed to receive the bus passes from the department in a timely fashion. She claimed that she had always expressed love for and interest in her son and a continuing desire to care for him.

The court heard and rejected the respondent's testimony. The court stated in its memorandum of decision: "It was obvious during [the respondent's] testimony that the respondent harbors an intense distrust of [the department] and its workers. The mother admitted this and claimed that [the department] had 'kidnapped' John from her at the hospital after he was born. However, the court ascribes little weight to [the respondent's] explanations about her lack of visits with John. It finds that [the respondent's] failure to be involved in the life of her son for nearly a decade resulted from her own inertia, and not from the malfeasance or misfeasance of the [commissioner]. [The department] offered the respondent numerous opportunities to become involved with John's treatment and to visit him at the [rehabilitation center and at his school]. It provided her with a bus pass. Unfortunately, [the respondent] did not visit with her son or maintain an active interest in him on a regular ongoing basis."

The respondent's claim relates to the weight to be given to the testimony. "It is axiomatic that the trial court, as trier of fact, is in the best position to judge the credibility of witnesses." *In re Danuael D.*, supra, 51 Conn. App. 838. The trial court found by clear and convincing evidence that the respondent failed to achieve a sufficient degree of personal rehabilitation and concluded that "[g]iven John's age, physical and mental challenges, his need for permanency and the excessively protracted amount of time he has been in foster care, it would be inappropriate to allow [the respondent] further time to pursue reunification,

because she cannot assume a responsible position in John's life within a reasonable time." We are unable to conclude that the court's findings as set out in its memorandum of decision are clearly erroneous and therefore affirm its conclusion.

## II

The respondent next claims that the trial court improperly determined that she had abandoned John.[4] We disagree.

"Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [Rev. to 1995] § 17a-112 (b) (1) [now § 17a-112 (c) (3) (A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . .

"Section 17a-112 (b) (1) does not contemplate a sporadic showing of the indicia of interest, concern or

---

[4] To prevail on her claim that the court improperly terminated her parental rights, the respondent must successfully challenge all of the bases of the judgment terminating her parental rights. "If [any] of the grounds on which the trial court relied are upheld on appeal, the termination of parental rights must stand." *In re Angellica W.*, 49 Conn. App. 541, 550, 714 A.2d 1265 (1998); see also *In re Luis C.*, supra, 210 Conn. 170. Even though we conclude that the court's finding concerning the respondent's failure to achieve sufficient rehabilitation is not clearly erroneous, we address the respondent's other claims. See *In re Roshawn R.*, supra, 51 Conn. App. 54–56; *In re Kezia M.*, 33 Conn. App. 12, 17, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993).

responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. . . .

"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . *In re Kezia M.*, [33 Conn. App. 12, 17–18, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993)]." (Internal quotation marks omitted.) *In re Roshawn R.*, supra, 51 Conn. App. 52–53.

The record in this case clearly supports the court's decision that statutory abandonment has occurred with respect to John. The respondent testified that she last saw John in 1994 or 1995. John's present foster mother testified that John had been living with her for more than two years when the respondent first contacted her, and that this occurred one week before the start of the termination trial. Despite the numerous opportunities given the respondent to visit with her son, she visited with him only sixteen times during a six year period. Testimony from department social workers established that the respondent never attended periodic treatment reviews conducted in connection with John's case and that she has not inquired about John during contacts with social workers in recent years. Moreover, John does not recognize the respondent as a family member.

The court found by clear and convincing evidence that the respondent had abandoned John. It is evident from the facts found by the court that the respondent

failed to manifest a reasonable degree of interest, concern or responsibility for her son's welfare. We conclude that the court's finding that the respondent abandoned her son was not clearly erroneous.

### III

The respondent next claims that the trial court improperly found that there was no ongoing parent-child relationship and to allow further time for the establishment of such a relationship would be detrimental to the child. We are not persuaded.

"[General Statutes (Rev. to 1995) §] 17a-112 (b) (4) [now § 17a-112 (c) (3) (D)] provides for the termination of parental rights if, upon clear and convincing evidence, it is proved that no ongoing parent-child relationship has existed in excess of one year. This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. *In re Juvenile Appeal (Anonymous)*, [177 Conn. 648, 670, 420 A.2d 875 (1979)]; *In re Michael M.*, [supra, 29 Conn. App. 128]; *In re Megan M.*, [supra, 24 Conn. App. 340]; *In re Juvenile Appeal (84-6)*, 2 Conn. App. 705, 708, 483 A.2d 1101 (1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985); *In re Juvenile Appeal (84-3)*, 1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984).

"It is reasonable to read the language of no ongoing parent-child relationship to contemplate a situation in which, regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitively lost that relationship, so that despite its former existence it has now been completely displaced. *In re Juvenile*

*Appeal (Anonymous)*, [supra, 177 Conn. 670]; *In re Jessica M.*, 217 Conn. 459, 470, 586 A.2d 597 (1991); *In re Juvenile Appeal (84-6)*, supra, [2 Conn. App.] 708–709. In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. See *In re Michael M.*, [supra, 29 Conn. App. 129]; *In re Megan M.*, [supra, 24 Conn. App. 341]. The ultimate question is whether the child has no present memories or feelings for the natural parent. *In re Jessica M.*, supra, 468; *In re Juvenile Appeal (84-6)*, supra, 709. Feelings for the natural parent connotes feelings of a positive nature only. *In re Jessica M.*, supra, 469; *In re Juvenile Appeal (84-6)*, supra [709]. *In re Kezia M.*, [supra, 33 Conn. App. 20–21]." (Internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 601–602, 722 A.2d 1232 (1999).

In this case, David Mantell, a clinical psychologist, testified that he did not observe a parent-child relationship between the respondent and John. He also testified that although John remembered a sibling, he did not display any memories of the respondent.[5] Mantell also testified that further time should not be permitted for the respondent to establish a relationship with John and that this child requires a permanent home. On the basis of the respondent's infrequent contacts with John over the past six years and the testimony of Mantell, the court concluded that "John has no positive feelings for, or memories of, the biological mother." The court

[5] Mantell testified as follows: "I see no evidence of a relationship between the mother and son. The child was generally avoidant of his mother. Her behavior was intrusive and reflected poor judgment. It caused considerable distress to the child who, once the mother left the room, again asked his foster mother, 'Mommy, I want to go home.' It is my impression that the mother and son visit was extremely stressful for this child. The mother appears to be thoroughly out of touch with her son's emotions, his day-to-day life and her impact upon him. As he left distressed, she was happy. I do not recommend that the child be subjected to another stressful visitation of the kind that I witnessed today."

found by clear and convincing evidence that no ongoing parent-child relationship existed between the respondent and John for a period of time in excess of one year, and that it would be detrimental to the child's best interests to allow the respondent further time to establish or reestablish a parent-child relationship.

Here, the evidence credited by the court supports its conclusion that no ongoing parent-child relationship exists between the respondent and John. "The psychological testimony from professionals is rightly accorded great weight in termination proceedings." (Internal quotation marks omitted.) *In re Kezia M.*, supra, 33 Conn. App. 22. Our thorough review of the entire trial record indicates that the findings of the court are supported by clear and convincing evidence.

IV

The respondent's final claim is that the trial court improperly found that it was in the best interests of John to terminate the respondent's parental rights because the commissioner did not make reasonable efforts to reunify John with the respondent. We disagree.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [respondent's] parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (d)]." *In re Denzel A.*, supra, 53 Conn. App. 833. The first and second factors concern the respondent's claim on appeal. They require the court to make findings regarding "[t]he timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent"; General Statutes (Rev. to 1995)

§ 17a-112 (d) (1); and "whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980, as amended . . . ." General Statutes (Rev. to 1995) § 17a-112 (d) (2).

The court, in its memorandum of decision, made specific findings regarding the seven statutory factors enumerated in § 17a-112 (d). Because only the first and second factors are at issue, we limit our discussion to them. With respect to the department's efforts at reunification, the court's findings can be summarized as follows. The court found that the respondent was offered a number of services aimed at reunification, including overnight visitation, visitation at the school and rehabilitation center, a bus pass to facilitate transportation, a psychological evaluation and various other social worker services. The court found by clear and convincing evidence that "the respondent mother was offered timely and appropriate reunification services, and that she unfortunately failed to take advantage of them." The court further found by clear and convincing evidence that the department made reasonable and appropriate efforts to reunite the respondent with her child but that the respondent failed to become more than minimally involved in John's life.

The court's findings concerning the department's efforts at reunification are factually supported by the record and are not clearly erroneous. John is now thirteen years old and has been in state foster care since he was released from the hospital after his premature birth. He has been in his present foster home since August, 1994, and testimony at trial established that John's emotional condition improved since his placement in this home. His current foster mother testified that he is calmer, more secure and happier. She and her husband are willing to adopt John. Mantell testified that it would be very harmful to return John to the

respondent, a woman he does not know. Accordingly, the court correctly concluded that the commissioner had established by clear and convincing evidence that it is in John's best interest that the respondent's parental rights be terminated so that he may be freed for adoption.

We conclude that the court's findings are not clearly erroneous, are legally correct and support the conclusions that the respondent has not rehabilitated herself and has abandoned John, that no ongoing parent-child relationship has existed for more than one year and that it is in the best interest of the child that the respondent's parental rights be terminated.

The judgment is affirmed.

In this opinion the other judges concurred.