[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families, DCF. DCF is seeking to terminate the parental rights of Ida Mae and John S., the biological parents of Jayvone S.
I. Procedural Background
On April 8, 1999 DCF filed neglect petitions and sought an Order of Temporary Custody, OTC, alleging that Jayvone was neglected in that the child was in immediate physical danger from his surroundings. Specifically, DCF alleged that Ida Mae S was homeless and a drug abuser and thus unable to care for her newborn child. Although initially confirmed, the OTC subsequently vacated on May 12, 1999 when Ida Mae entered Crossroads, a drug rehabilitation facility. On that date the child was adjudged neglected. He was placed under protective supervision for a period of twelve months.
On July 29, 1999 DCF again sought an OTC. The basis for this latter action was the fact that Ida Mae wanted to leave the Crossroads facility. DCF alleged that as a result, Jayvone was in immediate physical danger from his surroundings. The OTC was confirmed. Pursuant to DCF's motion, On September 1, 1999 the court reopened the order of protective supervision and modified the disposition to commitment. Although properly notified, neither parent appeared for the latter hearing. The court approved Jayvone's permanency plan on April 12, 2000. That plan was for a termination of parental rights and Jayvone's ultimate adoption. The plan also requested that the court enter a finding that reunification efforts were no longer appropriate.
On June 21, 2000 DCF filed a petition to terminate the parental rights of both of Jayvone's parents. Both John S and Ida Mae S received notice through publication. Neither appeared for the July 17, 2000 plea date. Subsequently, Ida Mae was incarcerated. Pursuant to court ordered habeas, she has appeared at all later court dates, including the trial for the termination of her parental rights that took place on December 5, 2000. Although properly notified, John S. has never appeared.
For the reasons set forth below, the court grants the termination petition on the grounds that both parents have abandoned both Jayvone. Additionally, the court finds that these parents have failed to achieve the degree to rehabilitation that would encourage the belief that within a reasonable time they could assume a responsible position in the child's lives.
From the evidence presented, the court finds the following facts: CT Page 1259
II. FACTS
Ida Mae, Jayvone's mother, is now forty-one years old. She is one of eight siblings and by all accounts had an unexceptional childhood. She graduated from high school in 1979. She had a history of substance abuse. Although her prior criminal history is minimal, she is currently serving a substantial sentence for sale of narcotics. She is not eligible for release until November 2002.
Jayvone is the youngest of five siblings. His parents never married. Indeed, his father, John S., has never been a factor in his life. Because John S. has not been available, information about him is not accessible.
Jayvone was born on April 1999. DCF removed the child from the hospital and sought and secured an order of temporary custody on April 8, 1999. Although initially placed under protective supervision, Jayvone was ultimately committed to the care and custody of DCF. Since that commitment he has remained in the same foster home.
Ida Mae has been inaccessible for most of Jayvone's life. Although offered the opportunity to attend counseling sessions at Crossroads, Ida Mae abruptly left the facility, this endangering both herself and her child. She has not had any contact since July 1999, the date she left that facility. Prior to her incarceration, she never contacted DCF concerning her son's welfare. She did not participate in any of the administrative reviews prepared for this minor child. She did not acknowledge birthdates, holidays or anniversaries. Although there is evidence that programs are available to inmates, albeit sporadically, there is no evidence that Ida Mae took advantage of these limited opportunities in an effort to rehabilitate.
Alexander is now nearly two years old and has been in foster care a significant portion of his life. He is a happy, healthy, well-adjusted child who has bonded with all members of the foster family household. His foster mother wishes to adopt Jayvone.
III. ADJUDICATORY FINDINGS
1. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is CT Page 1260 not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes 17a-112(c)(1)E.
DCF did make reasonable efforts to locate Respondent Father, John S. These efforts included publication, search of directories, search of incarcerated inmates and public assistance recipients. Despite these efforts, John S has remained unavailable. DCF does allege that Eugene is unable or unwilling to benefit from such services. Similarly, DCF made reasonable efforts to locate Respondent Mother, Ida Mae. She remained unavailable and homeless until her incarceration. Finally, the court notes that at a prior hearing pursuant to Connecticut General Statutes17a-110, there was already a finding that such efforts are not appropriate.
2. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, DCF must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael B., 49 Conn. App. 510,512, 714 A.2d 1279 (1998). The facts that a court can rely upon during this adjudicatory phase are also statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a). In the present case the relevant date is April 6, 2000.
a. Failure to Rehabilitate.
In October 1998, the court confirmed an order of temporary custody and entered court-ordered expectations. Those included
 Keeping all appointments set by DCF; Visiting the child as often as DCF permitted; Participating in parenting, individual and substance abuse counseling; Obtaining adequate housing and maintaining legal income; and Having no involvement with the criminal justice system.
To prevail on this basis, DCF must establish that as of the date of the filing of the termination petition, respondent parents, Ida Mae and John 5, had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in his life. Connecticut General Statutes 17a-112(c)(3)(B). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." Inre Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986), see also Inre Juvenile Appeal, 1 Conn. App. 463, 477, 473 A.2d 795 (1984). CT Page 1261
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In reHector L., 53 Conn. App. 359, 366-367, 703 A.2d 106 (1999).
In the present case, Ida Mae's rehabilitation efforts have been negligible. This court must conclude that as of the time of this petition, she has made minimal progress toward rehabilitation. The court further concludes her lack of rehabilitation continued even after the filing of the termination petition. This court finally concludes that the time still required for her to fully rehabilitate and to be able to care for any child reliably is lengthy, especially in light of his current incarceration. The court therefore finds, from the clear and convincing evidence, that Ida Mae cannot be rehabilitated as a parent of this child within the reasonably foreseeable future, consistent with Jayvone's needs for permanency.
DCF produced no evidence concerning Respondent Father's rehabilitation.
b. Abandonment
DCF further alleges that both parents have abandoned this child.
 Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [Rev. to 1995] § 17a-112(b)(1) [now § 17a-112(c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . In re John G., 56 Conn. App. 12, 20, 740 A.2d 496
(1999) (internal quotations omitted).
Our statutes do not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. To prevail, a parent must maintain, on a continuing basis, a reasonable CT Page 1262 degree of interest in the welfare of his or her child. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. Ida Mae last saw her child when she abruptly left Crossroads in July 1999. John S has never seen this child. Now incarcerated, Ida Mae suggests that a parent-child relationship can begin, to be fully realized when she is released from confinement in two years. This is an untimely, unrealistic and self-serving expectation.
For the foregoing reasons, the court finds by clear and convincing evidence that Jayvone has been abandoned by his biological parents within the meaning of the applicable statutes.
IV. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes 17a-112(e):
(1) Appropriate and timely services were provided by DCF to the family. These services benefited the child. Unfortunately, due to the fact that father's location was never known, DCF was not in a position to provide him with regular counseling. Mother was given adequate services, in particular Crossroads. She chose to terminate this program, to her detriment.
(2) As previously noted, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family. Unfortunately, eventually reunification efforts were inappropriate.
(3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for both parents but they were not able to even minimally fulfill them.
(4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Jayvone has CT Page 1263 settled into his foster home. He is not attached to his biological parents, who have never been a presence in his life.
(5) Finding regarding the age of the child. Eugene was born on April 1999 and is nearly two years old.
(6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that neither parent made any effort to change his or her life to accommodate the care and nurturing of this child. During a significant portion of the child's life, neither contacted the child or acknowledged the child.
(7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted.
V. DISPOSITION
The court concludes, from the clear and convincing evidence, that there is no biological parent read" now or in the foreseeable future, who will be able to care for Jayvone. The court concludes, from the clear and convincing testimony, that it is in Jayvone's best interests to have permanency and stability in his life. The court further finds that adoption by a family that understands and can accommodate his special needs is the avenue most likely to accomplish this result. The court also finds the testimony concerning Jayvone's adoptability persuasive.
The court therefore orders that a termination of parental rights enter with respect to Jayvone. The court further orders that a permanency plan for Jayvone be submitted within thirty days. A review plan for him shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge. January 15, 2001