[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families, DCF. DCF is seeking to terminate the parental rights of the biological mother of Destiny and Najee M. Hereinafter the children's mother will be referred to as Kristine. The identity of the children's father is not known. Based upon service by publication, a default judgment entered against the unknown father on October 25. 2000.
I. Procedural Background
On August 28, 1998 DCF filed neglect petitions and sought an Order of Temporary Custody, OTC, alleging that Destiny M was neglected in that the child was allowed to live in conditions injurious to her well being. On May 26, 2000 the agency filed a similar petition on behalf of Najee M. Subsequently both children were adjudged neglected and committed to the care and custody of DCF
On August 16, 2000 DCF filed a petition to terminate the parental rights on behalf of Destiny. On September 28, 2000 the department filed an identical petition on behalf of Najee. On January 11, 2001 both matters were consolidated for the scheduled trial for the termination of the mother's parental rights. Kristine did not attend that trial.
For the reasons set forth below, the court grants the termination petition on the arounds that Kristine has abandoned both children. Additionally, the court finds that Kristine failed to achieve the degree to rehabilitation that would encourage the belief that within a reasonable time she could assume a responsible position in the children's lives.
From the evidence presented, the court finds the following facts:
II. FACTS
Kristine M., the childrens mother, is now twenty-four years old. Her CT Page 1265 childhood was marked with physical and mental abuse. She left high school in the twelfth grade. Kristine's adult life has been problematic. She has abused cocaine, alcohol and marijuana. Additionally, she has been arrested and convicted for multiple misdemeanors. Throughout the tendency of these proceedings, at various times she has incarcerated.
Destiny was born on August 1998. She was suffering from cocaine withdrawal. DCF removed the child from the hospital and sought and secured an order of temporary custody on August 28, 1998. DCF also filed a neglect petition. Destiny was adjudicated neglected on September 30, 1998. Her commitment to DCF has been extended since that date. In September 1999 the Superior Court for Juvenile Matters entered a finding that DCF's efforts to reunify mother and child were no longer appropriate. Destiny has remained in the same foster care since her removal from the hospital.
Najee was born May 13, 2000. She also tested positive for cocaine at birth. She has been with her sister in the same foster family since her removal from the hospital.
Kristine has been sporadically incarcerated for a significant portion of her children's lives. When released, she has resided in an apartment within thirty feet of her children's current foster home. She never contacted DCF concerning the welfare of her children. Although notified, she did not participate in any court proceedings or administrative reviews prepared for these minor children. She did not acknowledge birthdates, holidays or anniversaries. Although there is evidence that individual counseling is available to inmates, albeit sporadically, there is no evidence that Kristine took advantage of these limited opportunities in an effort to rehabilitate.
Destiny is now two years old and has been in foster care since birth. Najee is eight months old and similarly situated. They are happy, healthy, well-adjusted children who have bonded with each other and all members of the foster family household. Their foster mother would adopt these girls.
III. ADJUDICATORY FINDINGS
A. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is CT Page 1266 not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes 17a-112(c)(1). DCF does allege and did establish that Kristine is unable or unwilling to benefit from such services. Her chronic inability to address drug addiction has prevented any meaningful rehabilitation. Additionally, in the present case with reference to Destiny, no finding is necessary inasmuch as at a prior hearing pursuant to Connecticut General Statutes17a-110, there was already a finding that such efforts are not appropriate.
B. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, DCF must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael B., 49 Conn. App. 510,512, 714 A.2d 1279 (1998). The facts that a court can rely upon during this adjudicatory phase are also statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a).
1. Abandonment
DCF initially alleges that Kristine abandoned her daughters.
 Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [Rev. to 1995] § 17a-112(b)(1) [now § 17a-112(c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . In re John G., 56 Conn. App. 12, 20, 740 A.2d 496
(1999) (internal quotations omitted).
Our statutes do not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. To prevail, a parent must maintain, on a continuing basis. a reasonable degree of interest in the welfare of his or her child. "The commonly CT Page 1267 understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. Kristine last saw her children in May 2000. This is significantly distressing insofar as the children reside within the same apartment complex.
2. Failure to Rehabilitate.
On two separate occasions, the court confirmed an order of temporary custody and entered court-ordered expectations. Those included
 Keeping all appointments set by DCF; Visiting the child as often as DCF permitted; Participating in parenting, individual and substance abuse counseling; Obtaining adequate housing and maintaining legal income; and Having no involvement with the criminal justice system.
To prevail on this basis, DCF must establish that as of the date of the filing of the termination petition. Eugene had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in his life. Connecticut General Statutes17a-112(c)(3)(B). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203,504 A.2d 532 (1986), see also In re Juvenile Appeal, 1 Conn. App. 463,477, 473 A.2d 795 (1984).
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989). In reHector L., 53 Conn. App. 359, 366-367, 703 A.2d 106 (1999).
In the present case, Kristine's rehabilitation efforts have been negligible. This court must conclude that as of the time of this petition, Kristine has made minimal progress toward rehabilitation. The court further concludes Kristine's lack of rehabilitation continued even CT Page 1268 after the filing of the termination petition. This court finally concludes that the time still required for her to fully rehabilitate and to be able to care for any child reliably is lengthy, especially in light of her continued addiction. The court therefore finds, from the clear and convincing evidence, that Kristine cannot be rehabilitated as a parent of these children within the reasonably foreseeable future, consistent with their needs for permanency.
C. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes 17a-112(e):
(1) Appropriate and timely services were provided by DCF to the family. These services would have benefited both Kristine and her children.
(2) As previously noted, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family. Unfortunately, due to mother's continued drug abuse and resultant incarceration, reunification efforts were inappropriate.
(3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Kristine but she was not able to even minimally fulfill them.
(4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Both Destiny and Najee have settled into their foster home. They are not attached to their biological mother, who has never been a presence in their lives.
(5) Finding regarding the age of the children. Destiny was born on August 1998 and is two years old. Najee was born on May 2000, and is eight months old.
(6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As CT Page 1269 detailed above, the court finds that this parent made no effort to change her life to accommodate the care and nurturing of these children. She has rarely contacted Destiny and has never visited Najee. In short, she has never acknowledged the children.
(7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted.
D. DISPOSITION
The court concludes, from the clear and convincing evidence, that there is no biological parent ready now or in the foreseeable future who will be able to care for Destiny or Najee. The court concludes, from the clear and convincing testimony, that it is in their best interests to have permanency and stability in their lives. The court further finds that adoption by a family that understands and can accommodate their special needs is the avenue most likely to accomplish this result for these young girls. The court also finds the testimony concerning their adoptability persuasive.
The court therefore orders that a termination of parental rights enter with respect to Respondent Mother, Kristine. The court further orders that a permanency plan for Destiny and Najee be submitted within thirty days. A review plan for him shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge. January 15, 2001