[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the CT Page 1830-m Commissioner of the Department of Children and Families, DCF. DCF is seeking to terminate the parental rights of the biological father, Wilfredo M.
I. Procedural Background
On July 6, 1999 DCF filed neglect petitions and sought an Order of Temporary Custody alleging that Wilfredo S was neglected in that the child was denied proper care and attention and further that he was allowed to live in conditions injurious to his well being. Subsequently the child was adjudged neglected and committed to the care and custody of DCF
On November 15, 2000 DCF filed a petition to terminate parental rights on behalf of Wilfredo. All parties were appropriately notified. A trial was held on January 30, 2001. Respondent father did not attend that trial.
For the reasons set forth below, the court grants the termination petition on the grounds that Respondent father has abandoned this child. Additionally, the court finds that there is no on going parent child relationship.
II. Facts
Wilfredo M., the child's father, is now twenty-two years old. His childhood was unremarkable. He attended public school in Waterbury through the ninth grade.
Respondent father has had little contact with his siblings. Further, his adult life has been problematic. Throughout the pendency of these proceedings, he has been either marginally employed or incarcerated.
The child, Wilfredo, was born on October 1997. On July 6, 1999 DCF removed the child from his home and sought and secured an order of temporary custody. DCF also filed a neglect petition. Wilfredo was adjudicated neglected on November 6, 2000.
Respondent father has been sporadically incarcerated for a significant portion of his child's life. Whether incarcerated or at liberty, he seldom contacted DCF concerning the welfare of his child. Although notified, he did not participate in any court proceedings or administrative reviews prepared for this minor child. He did not acknowledge birthdates, holidays or anniversaries. Although there is evidence that counseling was CT Page 1830-n available, there is no evidence that he took advantage of these opportunities in an effort to rehabilitate.
Wilfredo is now three years old and has been in foster care for over a year. As is true with any child at this age, he needs permanency in his life.
III. Adjudicatory Findings
A. Reasonable Reunification Efforts.
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes 17a-112
(c)(1). DCF does allege and did establish that Respondent father is unable or unwilling to benefit from such services. His chronic inability to address his lack of parenting skills has prevented any meaningful rehabilitation. Additionally, no finding is necessary inasmuch as at a prior hearing pursuant to Connecticut General Statutes 17a-110, there was already a finding that such efforts are not appropriate.
B. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, DCF must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael B., 49 Conn. App. 510,512, 714 A.2d 1279 (1998). The facts that a court can rely upon during this adjudicatory phase are statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a).
1. Abandonment
DCF initially alleges that Respondent father abandoned his son.
 Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [17a-112 (c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of CT Page 1830-o interest, concern or responsibility as to the welfare of the. . . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . In re John G., 56 Conn. App. 12, 20, 740 A.2d 496
(1999) (internal quotations omitted).
Our statutes do not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. To prevail, a parent must maintain, on a continuing basis, a reasonable degree of interest in the welfare of his or her child. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. Respondent father last saw his son in June 2000. He was maintained little if any interest in the child.
2. No Ongoing Parent/Child Relationship
DCF alleges that Wilfredo has no ongoing parent/child relationship with his father. This is the type of relationship that would ordinarily develop as the result of a parent providing the child's daily physical, emotional, moral and educational need. DCF further alleges that the time required to establish such a relationship would be detrimental to Wilfredo's best interests. Connecticut General Statutes 17a-112(3)(D). Termination on this ground is inappropriate unless "the child has no present memories or feelings for the natural parent." In re Jessica B.,217 Conn. 459, 468 A.2d 597 (1991). Alternatively, DCF must establish that even if a child has memories of the parent, "no positive emotional aspects of the relationship survive." In re Jessica B.,217 Conn. at 468-70. CT Page 1830-p
"Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of "interest, concern or responsibility' for the welfare of a child." In re Luke G.,40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985); In re Migdalia M.,6 Conn. App. 194, 208-209, 504 A.2d 532 (1986). While the biological father expressed an interest at trial in maintaining a relationship with Wilfredo, he took no affirmative action toward this goal.
This child has had little contact with his biological father. He has no feelings for his biological father within the meaning of the statute. As stated by the Appellate Court, "We must conclude, therefore, that the phrase "feelings for the natural parent' refers to feelings of a positive nature." In re Juvenile Appeal (84-6), 2 Conn. App. 705, 709, 483 A.2d 1101
(1984).
Having found that there is no parent/child relationship, the court must next decide whether to allow further time to develop such a relationship. The primary consideration is the best interests of the child. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home, ' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, 458 U.S. 502, 513 (1982). Because this father had sporadic contact with his child, to allow further time would be detrimental.
For the foregoing reasons, the court finds by clear and convincing evidence that Wilfredo has no ongoing parent I child relationship with Respondent father within the meaning of the applicable statutes.
C. Required Findings
The court makes the following factual findings required by Connecticut General Statutes 17a-112 (e):
(1) Appropriate and timely services were provided by DCF to the family. These services would have benefited both father and child.
(2) As previously noted, the court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family. Unfortunately, due to father's noncompliance, reunification efforts were inappropriate.
(3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. CT Page 1830-q The court finds that reasonable court expectations were set for Respondent father but he was not able to minimally fulfill them.
(4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Wilfredo is not attached to his biological father, who has never been a presence in their lives.
(5) Finding regarding the age of the children. Born on October 1997, Wilfredo is now a three-year-old child.
(6) Finding regarding efforts of the parent to adjust his circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that this parent made no effort to change his life to accommodate the care and nurturing of this child. He has rarely contacted the child. In short, he has never acknowledged the child.
(7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted.
D. DISPOSITION
The court concludes, from the clear and convincing evidence, that the biological father is not ready now or in the foreseeable to care for Wilfredo. The court concludes, from the clear and convincing testimony, that it is in their best interests to have permanency and stability in his life. The court further finds that adoption by a family that understands and can accommodate their special needs is the avenue most likely to accomplish this result for this young boy.
The court therefore orders that a termination of parental rights enter with respect to Respondent father, Wilfredo M. The court further orders that a permanency plan for Wilfredo be submitted within thirty days. A CT Page 1830-r review plan for him shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge