[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families. The Department is seeking to terminate the parental rights of the biological fathers, Kenneth M., father of Tameeka, and Willie S., father of Keisha. The children's mother died in March 1999.
I. Procedural Background
On October 14, 1998 the Department filed neglect petitions and sought an Order of Temporary Custody alleging that Tameeka and Keisha were neglected in that the children were abandoned, denied proper care and attention and finally allowed to live in conditions injurious to their well being. Subsequently the children were adjudged neglected and committed to the care and custody of the Department.
On November 22, 2000 the Department filed a petition to terminate parental rights on behalf of both girls. Their respective fathers were notified appropriately. A trial was held on February 5, 2001. Neither father attended that trial.
For the reasons set forth below, the court grants the termination petition on the grounds that Respondent fathers have abandoned their daughters. Additionally, the court finds that there is no ongoing parent child relationship.
II. Facts
Despite the efforts of the Department and family members to contact the fathers of these children, neither father has ever been involved in the lives of these two young girls. Their addresses have remained unknown. CT Page 2271 There is no available personal information about either gentleman.
Tameeka M. was born on February 1991. She was removed from her home on October 11, 1998 when her mother was hospitalized for gunshot wounds. The Department sought and secured an order of temporary custody. It also filed a neglect petition. The child was adjusted neglected and subsequently placed in a series of foster homes. At the present time, she resides with a maternal aunt in Bridgeport, Connecticut.
Keisha M was born on March 1992. The circumstances surrounding her initial commitment to the Department are identical to those of her older sister. Unfortunately, Keisha has had a visceral reaction to her mother's death and did not respond well to foster care. She is currently in a residential program at the Elmcrest Hospital.
Neither father ever contacted the Department concerning the welfare of his child. They did not participate in any court proceedings or administrative reviews prepared for these minor children. They did not acknowledge birthdates, holidays or anniversaries. They have abandoned these young girls in every sense of the word.
Tameeka is nearly ten years old. Keisha is eight years old. They have been in foster care for over two years. As is true with any child, they need permanency in their lives.
III. Adjudicatory Findings
A. Reasonable Reunification Efforts.
In order to terminate parental rights, the Department must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes17a-112(c)(1). The Department does allege and did establish that Respondent fathers were unable or unwilling to benefit from such services. Additionally, no finding is necessary inasmuch as at a prior hearing pursuant to Connecticut General Statutes 17a-110, there was already a finding that such efforts are not appropriate.
B. Statutory Grounds
In order to prevail in a non-consensual termination of parental CT Page 2272 rights, the Department must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael B.,49 Conn. App. 510, 512, 714 A.2d 1279 (1998). The facts that a court can rely upon during this adjudicatory phase are statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a).
1. Abandonment
The petitioner initially alleges that Respondent Fathers abandoned their daughters.
 Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [17a-112(c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . In re John G., 56 Conn. App. 12, 20, 740 A.2d 496
(1999) (internal quotations omitted).
Our statutes do not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. To prevail, a parent must maintain, on a continuing basis, a reasonable degree of interest in the welfare of his or her child. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. Respondent Fathers have not seen their daughters in over three years. They have maintained little if any interest in their CT Page 2273 children.
2. No Ongoing Parent/Child Relationship
The Department further alleges that Tameeka and Keisha have no ongoing parent/child relationship with their fathers. This is the type of relationship that would ordinarily develop as the result of a parent providing the child's daily physical, emotional, moral and educational need. The Department further alleges that the time required to establish such a relationship would be detrimental to the children's best interests. Connecticut General Statutes 17a-112(c)(3)(D). Termination on this ground is inappropriate unless "the child has no present memories or feelings for the natural parent." In re Jessica B., 217 Conn. 459,468 A.2d 597 (1991). Alternatively, DCF must establish that even if a child has memories of the parent, "no positive emotional aspects of the relationship survive." In re Jessica B., 217 Conn. at 468-70.
"Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of a child." In re Luke G.,40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985); In re Migdalia M.,6 Conn. App. 194, 208-209, 504 A.2d 532 (1986).
For at least three years these children have had no contact with their biological fathers. They have no feelings for their biological fathers within the meaning of the statute. As stated by the Appellate Court, "We must conclude, therefore, that the phrase `feelings for the natural parent' refers to feelings of a positive nature." In re Juvenile Appeal(84-6), 2 Conn. App. 705, 709, 483 A.2d 1101 (1984).
Having found that there is no parent/child relationship, the court must next decide whether to allow further time to develop such a relationship. The primary consideration is the best interests of the child. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, 458 U.S. 502, 513 (1982). Because these fathers have had no contact with their children, to allow further time would be detrimental.
For the foregoing reasons, the court finds by clear and convincing evidence that both Tameeka and Keisha have no ongoing parent / child relationship with Respondent Fathers within the meaning of the applicable statutes. CT Page 2274
C. Required Findings
The court makes the following factual findings required by Connecticut General Statutes 17a-112(e):
(1) Appropriate and timely services were provided by the Department to the families. These services would have benefited both father and child.
(2) As previously noted, the court finds by clear and convincing evidence that the Department made reasonable efforts to reunify the family. Unfortunately, due to the fathers' non-compliance, reunification efforts were inappropriate.
(3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Respondent Fathers but they did not even minimally fulfill them.
(4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. These girls are not attached to their biological fathers, who have never been a presence in their lives.
(5) Finding regarding the age of the children. Tameeka is nearly ten years old. Keisha is eight years old.
(6) Finding regarding efforts of the parent to adjust his circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that these parents made no effort to change their lives to accommodate the care and nurturing of these children.
(7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted. CT Page 2275
D. DISPOSITION
The court concludes, from the clear and convincing evidence, that the biological fathers are not ready now or in the foreseeable to care for Tameeka and Keisha. The court concludes, from the clear and convincing testimony, that it is in their best interests to have permanency and stability in their lives. The court further finds that adoption by a family that understands and can accommodate their special needs is the avenue most likely to accomplish this result for these young girls.
The court therefore orders that a termination of parental rights enter with respect to Respondent Fathers, Kenneth M and Willie S. The court further orders that a permanency plan each child be submitted within thirty days. A review plan for them shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge February 5, 2001