[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a petition for the termination of parental rights based on abandonment, the absence of an ongoing parent-child relationship and failure to rehabilitate.
The court finds that on October 31, 1998, the child, Nazan G., was born out of wedlock to Wilma G., the respondent mother, and Herman S., the respondent father. Nazan was born with positive toxicology for opiates and cocaine and underwent a severe detoxification. The respondent father has seen his son only once and has had no other contact with him. The mother visited with the child seven times prior to the filing of the termination petition. She has failed to address her drug abuse, which has plagued her since the age of ten, and has failed to secure adequate housing.
Shortly after birth, Nazan was taken into custody by the Department of Children and Families (DCF) pursuant to a 96 hour hold. On November 6, 1998, the court granted DCF's application for an emergency ex parte order of temporary custody. At that time, DCF also filed a neglect petition. On November 12, 1998, the court issued the respondents specific steps to facilitate the return of their child. On June 2, 1999, Nazan was adjudicated neglected and committed to the custody of the commissioner of DCF. On November 9, 1999, the court found that further efforts to reunify Nazan with his parents were not appropriate.
On January 11, 2000, DCF filed a petition to terminate the respondents' parental rights based on abandonment and lack of an on-going parent-child relationship. On November 27, 2000, the court granted DCF's motion to amend the petition to add failure to rehabilitate as a ground for termination.
On January 16, 2001, counsel appeared for trial. The respondents failed to appear.[1] The default trial was conducted based on the admission of exhibits to which counsel had agreed.
 Mandatory Findings
In determining whether to terminate parental rights in cases not based on consent, § 17a-112(d) requires that the court consider and make written findings regarding the following matters. In re Romance M.,229 Conn. 345, 354-55, 641 A.2d 378 (1994); In re Maxima V.,44 Conn. App. 80, 83, 686 A.2d 1005 (1997).
1. Finding regarding the timeliness, nature and extent of servicesoffered, provided, and made available to the parent and the child by achild-placing agency to facilitate the reunion of the child with theparent.
The mother was timely offered (1) substance abuse evaluation, detoxication and treatment services, (2) parenting classes, and (3) transportation to visits with her son.
The father was offered visits with his son and parenting classes. However, he wants nothing to do with his son and has visited him only once since placement.
2. Finding regarding whether DCF has made reasonable efforts to reunitethe family pursuant to the Federal Child Welfare Act of 1980, asamended.
DCF' made reasonable efforts to reunite the family.[2]
3. Finding regarding the terms of any applicable court order enteredinto and agreed upon by any individual or child-placing agency and theparent, and the extent to which all parties have fulfilled theirobligations under such order.
The mother was ordered to: keep all appointments set by or with DCF and to cooperate with DCF's home visits; keep her whereabouts known to DCF and to her attorney and to her child's attorney; to submit to substance abuse treatment; submit to ransom drug testing; follow the recommendations of service providers; sign releases authorizing DCF to communicate with service providers; secure and maintain adequate housing and income; engage in no substance abuse; have no involvement with the criminal justice system; visit Nazan as often as DCF permits.
The mother failed to comply with these expectations. She has continued to abuse drugs and to allow her substance abuse to interfere with her ability to parent. On October 1, 1999, she committed the crime of larceny in the first degree for which she was convicted and sentenced to ninety days in prison. Four times in 1999, she committed and was convicted of CT Page 1072 larceny in the sixth degree. Three times that year she was convicted of failure to appear in the second degree. She was repeatedly incarcerated. In addition, she has prior felony convictions.
The father was ordered to: keep all appointments set by or with DCF and to cooperate with DCF's home visits; keep his whereabouts known to DCF and to his attorney and to his child's attorney; participate in parenting counseling; submit to substance abuse assessment and follow recommendations regarding treatment; sign releases authorizing DCF to communicate with service providers; secure and maintain adequate housing and income; engage in no substance abuse; have no involvement with the criminal justice system; immediately advise DCF of any changes in the composition of your household.
The father, who resides out of state, has failed to make himself available.
4. Finding regarding the feelings and emotional ties of the child withrespect to the child's parents, any guardian of the child's person andany person who has exercised physical care, custody or control of thechild for at least one year and with whom the child has developedsignificant emotional ties.
The child does not recognize the mother as his mother. The child does not know the respondent father. The child has a strong bond with his foster parents.
5. Finding regarding the age of the child.
Nazan is now two years of age.
6. Finding regarding the efforts the parent has made to adjust suchparent's circumstances, conduct or conditions to make it in the bestinterest of the child to return the child to the parent's home in theforeseeable future, including, but not limited to: (A) the extent towhich the parent has maintained contact with the child as part of aneffort to reunite the child with the parent; provided the court may giveweight to incidental visitations, communications or contributions, and(B) the maintenance of regular contact or communication with the guardianor other custodian of he child.
The respondent mother has made no significant efforts to make it in Nazan's best interests to return to her. She continues to abuse drugs and to be involved with the criminal justice and penal systems. She has not visited Nazan consistently. Notably, she did not appear for trial. CT Page 1073
Any efforts made by the respondent father are largely unknown, except that he has maintained no contact with the child or with DCF.
7. Finding regarding the extent to which a parent has been preventedfrom maintaining a meaningful relationship with the child by theunreasonable act or conduct of the other parent of the child, or theunreasonable act of any other person or by the economic circumstances ofthe parent.
Neither parent has been prevented from maintaining a meaningful relationship with Nazan by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent. DCF offered transportation to the respondent mother to facilitate visitation.
The court finds that DCF has failed to prove lack of ongoing parent child relationship as to both parents. See In re Valerie D., 223 Conn. 492,613 A.2d 748 (1992).
The court finds that DCF has failed to prove abandonment with respect to the respondent mother by clear and convincing evidence. General Statutes § 17a-112(C)(a) requires that the petitioner prove that: "The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . ."
"Appellate courts have repeatedly observed that [a]bandonment focuses on the parent's conduct. . . .A lack of interest in the child is not the sole criterion in determining abandonment. . . ." (Citations omitted; internal quotation marks omitted.) In re Angellica W., 49 Conn. App. 541,551, 714 A.2d 1265 (1998). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . .Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . .
"Section 17a-112(b)(1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. . . .
"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) CT Page 1074 express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . ." (Internal quotation marks omitted.) In re John G., 56 Conn. App. 12,20-21, 740 A.2d 496 (1999).
While the evidence suggests that, as of one year ago, the mother was far from consistent with visitation, the evidence does not address the other indicia of contact — telephone calls, the sending of cards and gifts, and financial support. Since the burden of proof is on DCF, the court cannot draw an adverse inference against the mother with respect to these items, based on DCF's failure to mention them.
The court does find by clear and convincing evidence that the father has abandoned Nazan. He has had no contact with the child in two years nor has he supported him.
DCF also alleges that the parents have failed to be rehabilitated. General Statutes § 17a-112(c)(3)(B) requires that DCF prove that "the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . ."
In In re Shyliesh H., 56 Conn. App. 167, 180, 743 A.2d 165 (1999), the Appellate Court stated:
 In In re Eden F., [250 Conn. 674, 706, 741 A.2d 873 (1999)] our Supreme Court recently interpreted § 17a-112(c)(3)(B), explaining that "[p]ersonal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. Rehabilitate means to restore [a handicapped or delinquent person] to a useful and constructive place in society through social rehabilitation. . . .The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. NorCT Page 1075 does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Citation omitted; internal quotation marks omitted.) This court recently explained that in assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue.
(Internal quotation marks omitted.)
The court finds that DCF has failed to prove this ground against the respondent father. There simply is an absence of evidence as to him.
The court finds that DCF has proved by clear and convincing evidence that Nazan has previously been adjudicated neglected and that the respondent mother "has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . ." She has a twenty year history of drug abuse. She continues to abuse drugs. She is a convicted felon with a total of ten arrests. At the time of the filing of the petition she was again incarcerated. She has five children, three of whom have been removed from her care and adjudicated neglected or uncared for. She has made no progress toward rehabilitation.
"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child." In re Eden F., supra,250 Conn. 689. "In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in § 17a-112(d)."In re Tyscheicka H., 61 Conn. App. 19, 26, ___ A.2d ___ (2000).
For the reasons contained in the court's § 17a-112(d) findings, supra, the court finds by clear and convincing evidence that it is in CT Page 1076 Nazan's best interests that his parents' parental rights be terminated. The respondent mother cannot care for Nazan; the respondent father, at the very least, does not wish to do so.
The petition is granted as to both respondents. The court terminates the respondents' parental rights. It is further ordered that the Commissioner of the Department of Children and Families is appointed statutory parent for Nazan for the purpose of securing a permanent adoptive family. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
BY THE COURT
Bruce L. Levin Judge of the Superior Court