[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Regarding Termination of Parental Rights
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families. The Department is seeking to terminate the parental rights of the children's biological parents, Rosita G and Alexander M
I. Procedural Background
On December 5, 1997 the Department of Children and Families filed neglect petitions and sought an order of temporary custody alleging that Alexander and Charissa M. were neglected in that the children were denied proper care and attention. The Department also alleged that the children were allowed to live in conditions injurious to their well being. The order of temporary custody was sustained on December 12, 1997. Subsequently the children were adjudged neglected and committed to the care and custody of the Department. On March 24, 1999 the court entered a finding that continuing efforts to reunify the children with their father were no longer appropriate. On March 22, 2060 the court entered a finding that continuing efforts to reunify the children with their mother were no longer appropriate
On June 6, 2000, the Department filed a petition to terminate the parental rights of both parents. With respect to Respondent Mother, the Department alleged that the children had been abandoned and further that Respondent Mother had failed to rehabilitate. The allegations concerning Respondent Father were that the children had been abandoned and further that there was no ongoing parent-child relationship. CT Page 3759
On this date this Court presided over a trial in this matter. Present in the courtroom were Assistant Attorney General counsel for the Department of Children and Families, counsel for the mother, counsel for the minor child and social worker for the Department of Children and Families. Although properly served, neither parent attended the court proceedings.
For the reasons set forth below, the court grants the termination petition on the grounds (1) Respondent Mother has failed to rehabilitate; (2) Respondent Mother has abandoned these children; (3) Respondent Father has abandoned these children; and (4) there is no ongoing parent-child relationship between Respondent Father and these children. Connecticut General Statutes 17a-112 (c).
II. Facts
 A. Respondent Mother, Rosita G.
Rosita G, the children's biological mother, was born in Brooklyn, New York in 1969. She has nine siblings. Ms G. did not graduate from school, having left in fifth grade. She has four children.
Prior to the children's initial commitment there was evidence that Ms. G had repeatedly ignored the children's medical and physical needs. The Department was forced to secure an order of temporary custody when the children's parents left Alexander and Charissa in the care of an individual who lacked the physical resources to care for the children.
Alexander and Charissa were committed to the care and custody of the Department in March 1998. Since that time, Ms G. done nothing to reunify with these children. Initially she visited sporadically. Eventually she stopped visits entirely. She has never acknowledged the children's birthdays. She ignored the children at Christmas and other holiday times. She has never sent any cards, gifts or letters. She failed to participate in any administrative case reviews. She seldom attended any court proceedings.
Ms G has failed to complete any of the procedure recommended by the Department in its efforts to reunify this family. She has constantly tested positive for illicit substances. She has not completed any drug rehabilitation. She has failed to maintain adequate housing and legal income. She has frequently committed criminal acts and consequently has been intermittently incarcerated during the relevant time period. She has not kept either her counsel or the Department aware of her location and has probably been living out of state for a large portion of the relevant CT Page 3760 time frame. She has refused to attend therapy or counseling. In short, she has done nothing to achieve a level of competency that would encourage reunification.
B. Respondent Father, Alexander M.
The trial provided no information concerning Alexander M, the children's biological father.
C. The Children, Alexander and Charissa M.
Alexander was born on October 1995. Approximately three years later the Department removed the child from his home. He has seldom seen his mother since that date. He has never seen his father. Alexander is now five years old and has been in foster care most of his young life. He is a happy, healthy, well-adjusted child who has bonded with his foster family's household. His foster parents wish to adopt Alexander.
Charissa was born on December 1993. She has been in foster care since shortly before her fourth birthday. Unfortunately, Charissa is a troubled young child. She required stability. The Department is confident that they can find an appropriate foster home for this child.
III. Adjudicatory Findings
 A. Reasonable Reunification Efforts
In order to terminate parental rights, the Department must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes17a-112(c)(1). The Department does allege that these parents are unable or unwilling to benefit from such services. However, in the present case no finding is necessary inasmuch as at a prior hearing pursuant to Connecticut General Statutes 17a-110, there was already a finding that such efforts are not appropriate.
B. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, the Department must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael B.,49 Conn. App. 510, 512 (1998). The facts that a court can rely upon CT Page 3761 during this adjudicatory phase are also statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a). In the present case the relevant date is April 6, 2000.
1. Respondent Mother's Failure to Rehabilitate.
In December 1997 the court confirmed an order of temporary custody and entered court-ordered expectations. Those included
 Keep all appointments set by the Department; Visit the child as often as DCF permitted; Participate in parenting, individual and substance abuse counseling; Obtain adequate housing and maintaining legal income; No substance abuse; Submit to substance abuse assessment; and Have no involvement with the criminal justice system.
To prevail on this basis, the Department must establish that as of the date of the filing of the termination petition, Rosita G had not achieved a requisite degree of personal rehabilitation. That level must be such as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in her children's life. Connecticut General Statutes 17a-112 (c)(3)(B). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986),see also In re Juvenile Appeal, 1 Conn. App. 463, 477, 473 A.2d 795
(1984).
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In reHector L., 53 Conn. App. 359, 366-367, 730 A.2d 106 (1999). Because of this requirement that the court predict what may happen within a "reasonable time" after the filing of the termination petition, the court must consider not only Ms. G.'s conduct prior to the filing of those petitions, but also her conduct after that time. In this case, this was a period of slightly less eight months.
This court must conclude that as of the time of this petition, Ms. G. made minimal progress toward rehabilitation. The court further concludes her lack of rehabilitation continued even after the filing of the termination petition. This court finally concludes that the time still required for her to fully rehabilitate and to be able to care for any CT Page 3762 child reliably is indeterminate. Indeed there is little to suggest that such rehabilitation will ever occur. The court therefore finds, from the clear and convincing evidence, that Ms. G cannot be rehabilitated as a parent of these children within the reasonably foreseeable future, consistent with their needs for permanency.
2. Abandonment
The Department also alleges that Ms. G and Mr. M abandoned Alexander and Charissa. "Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [Rev. to 1995] § 17a-112(b)(1) [now § 17a-112(c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . ." In re John G., 56 Conn. App. 12, 20, 740 A.2d 496
(1999) (internal quotations omitted).
Our statutes do not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. To prevail, a parent must maintain, on a continuing basis, a reasonable degree of interest in the welfare of his or her child. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. There is no evidence that Mr. M. ever seen these children. Ms. G last saw her children in 1999. She has ignored each and every one of the children's developmental needs.
 3. No Ongoing Parent — Child Relationship Between Respondent Father, Alexander M. And These Children
With respect to Mr. M the Department has established that the children have no ongoing parent-child relationship with their biological father. CT Page 3763 This is the type of relationship that would ordinarily develop as the result of parent providing the children's daily physical, emotional, moral and educational needs. The Department further established that the time required to establish such a relationship would be detrimental to the children's best interests. Connecticut General Statutes 17a-112
© (3)(D).
Termination on this ground is inappropriate unless "the child has no present memories or feelings for the natural parent." In re Jessica B.,217 Conn. 459 (1991). Alternatively, the Department must establish that even if a child has memories of the parent, "no positive emotional aspects of the relationship survive." In re Jessica B.,217 Conn. at 468-70. "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of a child." In reLuke G., 40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985); In re MigdaliaM., 6 Conn. App. at 208-9. Here the efforts by father have been nonexistent.
Having found that there is no parent-child relationship, the court must next decide whether to allow further time to develop such a relationship. The primary consideration is the best interests of the children. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, 458 U.S. 502, 513 (1982). Because this father has no contact with his children, to allow any additional time would be both futile and, more importantly, detrimental to these children. For the foregoing reasons, the court finds by clear and convincing evidence that Alexander and Charissa have no ongoing parent-child relationship with Mr. M. within the meaning of the applicable statutes.
C. Required Findings
The court makes the following factual findings required by Connecticut General Statutes 17a-112 (e):
 (1) Appropriate and timely services were provided by the Department to the family. These services benefited the children. Ms. G and Mr. M. failed to accept any of the services.
 (2) As previously noted, the court finds by clear and convincing evidence that the Department made reasonable efforts to reunify the family. Mother CT Page 3764 refused to participate. Father never appeared.
 (3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for both parents but they were not able to even minimally fulfill them.
 (4) The feelings and emotional ties of the children with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. Alexander has settled into his foster home. He is not attached to his biological parents, neither of whom has ever been a presence in his life Charissa has been in a series of foster homes. Her ability to form significant attachments is severely impaired. It is clear, however, that she has no knowledge of or attachment to her biological parents.
 (5) Finding regarding the age of the children. Alexander was born on October 1995 and is five years old. Charissa was born on December 1993 and is seven years old.
 (6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the children as part of an effort to reunite the children with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child.
 As detailed above, the court finds that these parents made no effort to change their lives to accommodate the care and nurturing of these children.
CT Page 3765
 (7) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent. No such conduct is noted.
IV. Disposition
The court concludes, from the clear and convincing evidence, that there is no biological parent ready now or in the foreseeable future, who will be able to care for either Alexander of Charissa. The court concludes, from the clear and convincing testimony, that it is in the children's best interests to have permanency and stability in their lives. The court further finds that adoption by a family that understands and can accommodate their special needs is the avenue most likely to accomplish this result for Alexander and Charissa. The court also finds the testimony concerning their adoptability persuasive.
The court therefore orders that a termination of parental rights enter with respect to both Rosita G and Alexander M The court further orders that a permanency plan for the children be submitted within thirty days. A review plan for her shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge March 2, 2001