[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Regarding Termination of Parental Rights.
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families (the Department). The Department is seeking to terminate the parental rights of Frederic N's biological parents, Cassandra N and Allan N.
I. Procedural Background
On July 19, 1999 the Department filed neglect petitions and sought an order of temporary custody alleging that the child's parents could not provide the specialized care that this child required. The Superior Court for Juvenile Matters in Waterbury sustained that emergency order on July 21, 1999. Subsequently that Court adjudged Frederick neglected and committed him to the care and custody of the Department. On August 9, 2000 the Court entered a finding that continuing efforts to reunify the child with his parents were no longer appropriate.
On October 11, 2000 the Department filed a petition to terminate the parental rights of both parents. With respect to Respondent Mother, CT Page 6349 Cassandra N, the Department alleged that the child had been abandoned, that Cassandra had failed to rehabilitate and that there was no ongoing parent — child relationship between mother and child. The allegations concerning Respondent Father, Allan N., were that the child had been abandoned. On February 27 and March 27, 2001 this Court presided over a trial in this matter.
For the reasons set forth below, the Court grants the termination petition on the grounds (1) Respondent Mother has failed to rehabilitate; (2) there is no ongoing parent child relationship between Respondent Mother and this child; and (3) both parents have abandoned this child. Connecticut General Statutes 17a-112 (c).
II. Facts
 A. Respondent Mother, Cassandra N
Cassandra N, this child's biological mother, was born in Bridgeport, Connecticut in 1966. She did not graduate from high school, having left in her eleventh grade. She has three children, the youngest of whom is Frederic.
Frederic's initial commitment was prompted by Cassandra's abuse of crack cocaine immediately before the birth of this child. Although the delivery of her child was imminent, Cassandra utilized the illicit drug, thus ignoring the child's medical and physical needs. The Department was forced to secure an order of temporary custody.
Frederic has been in the care and custody of the Department from birth. Since that time, his mother has done nothing to reunify with this child. Initially she visited the child sporadically.[1] Eventually she stopped visits entirely. She last saw her child in June 2000. Cassandra's justification for her lack of attention to this child, personal time conflicts, was disingenuous at best. She simply chose not to visit even though she was free to do so. She has never acknowledged the child's birthday. She ignored the child at Christmas and other holiday times. She has never sent any cards, gifts or letters. She failed to participate in any administrative case reviews.
When she was not incarcerated, Cassandra routinely failed to attend court proceedings. In particular, she failed to appear for three separately scheduled paternity tests. She also missed appointments with her Probation Officer. She failed to advise either the Department or the Office of Adult Probation of her multiple changes of residence.
Cassandra's personal history between the child's commitment and the CT Page 6350 filing of the termination petition contains both arrests and convictions. At the time of the hearing, she was incarcerated due to an alleged violation of probation.
Further, Cassandra did not complete any of the multiple drug treatment programs referred by both the Department and her probation officer. In particular, she did not attend scheduled drug treatment evaluation sessions. She failed to accept rehabilitation treatment at either the Guenster Treatment facility or the Morris Foundation.[2] She missed most parenting classes at the Family Ties facility. She did not attempt any individual counseling. Cassandra had a violation of probation pending at the time of this trial. Although applied for entry in Waterbury Superior Court's criminal diversionary Drug Court, that effort did not negate her drug involvement both before and after Frederic's birth.
Cassandra has failed to complete any of the procedures recommended by the Department in its efforts to reunify this family. She has constantly tested positive for illicit substances. She has not completed any drug rehabilitation. She has failed to maintain adequate housing and legal income. She has frequently committed criminal acts and consequently has been intermittently incarcerated during the relevant time period. She has kept neither her counsel nor the Department aware of her location and has probably been living out of the area, if not the state, for a large portion of the relevant time frame. She has refused to attend therapy or counseling. In short, she has done nothing to achieve a level of competency that would encourage reunification.
B. Respondent Father, Allan N.
At the time the Department sought the initial order of temporary custody, Respondent Father, Allan N, was incarcerated, awaiting trial. He remains confined, having been convicted subsequently of Robbery in the First Degree. On October 20, 2000 he was sentenced to a twenty-five year term of confinement. Allan has filed an appeal from that conviction. He also has initiated a petition for writ of habeas corpus.[3]
Allan had not been named as father on this child's birth certificate. He did not acknowledge paternity. Consequently the Court ordered paternity testing in July 1999. Cassandra failed to appear for court ordered paternity testing on three separate occasions.[4] The paternity issue was not resolved until December 22, 2000, months after a court finding that reunification efforts were no longer appropriate.
Allan has been incarcerated for all of Frederic's life. He has never seen his child.[5] While incarcerated, he was aware of the court proceedings. Indeed he was transported to court on all court dates. He did CT Page 6351 not seek any in court reviews of the Department's actions. He has not taken advantage of the rehabilitation programs sponsored by the Department of Corrections.
Despite his knowledge of the pending proceedings, Allan seldom contacted the Department concerning his child's welfare. He did request a photograph of the child in March 2000, after the Department filed a Petition for Termination of Parental Rights. The Department complied with that request. Although notified, Respondent Father did not participate in initial administrative reviews prepared for this minor child. He did not acknowledge birth dates, holidays or anniversaries.
Although the Department's contact with Allan was not overwhelming, Allan did not initiate any activity sua sponte.[6] He could have acknowledged paternity. He had the ability, albeit limited, to maintain telephone contact with the Department. Furthermore, Allan could have used written correspondence but chose not do to so. He had only one conversation with the Department social workers prior to trial. Telephone logs introduced at trial substantiate the fact that Respondent Father made little effort to contact the Department.[7]
Furthermore, until paternity was established, it was in the best interests of the child that there not be visits. Had Allan not been the father, the child would have been visiting a total stranger who had no standing in the instant matter.
C. The Child, Frederic N
Frederic was born on July 1999. He tested positive for cocaine at birth. He was committed to the care and custody of the Department while still a newborn at Waterbury Hospital. Frederic has been in the same foster care virtually since birth.
The physical concerns present at the time of his birth have all been corrected. Initially the child suffered from cocaine withdrawal. The tremors and physical infirmities have dissipated. He is currently in a foster home, but visits with maternal relatives on a regular basis.
III. Adjudicatory Findings
 A. Reasonable Reunification Efforts
In order to terminate parental rights, the Department must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or CT Page 6352 unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes17a-112 (c)(1). The Department does allege that these parents are unable or unwilling to benefit from such services. However, in the present case no finding is necessary inasmuch as at a prior hearing pursuant to Connecticut General Statutes 17a-110, there was already a finding that such efforts are not appropriate. In re Deana E.,61 Conn. App. 185, 184-5, ___ A.2d ___ (2000). In the present case, the Department had earlier secured a ruling that reunification efforts were no longer appropriate.[8]
 B. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, the Department must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael R.,49 Conn. App. 510, 512, 714 A.2d 1279 (1998). The facts that a court can rely upon during this adjudicatory phase are also statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a).
1. Respondent Mother's Failure to Rehabilitate.
In July 1999 the Court confirmed an order of temporary custody and entered court-ordered expectations. Those included
 Keep all appointments set by the Department; Visit the child as often as the Department permitted; Participate in parenting, individual and substance abuse counseling; Obtain adequate housing and maintaining legal income; No substance abuse; Submit to substance abuse assessment; Have no involvement with the criminal justice system; and Cooperate with the Department of Adult Probation.
The Department has alleged that Cassandra has failed to achieve any of these mandated steps, has thus failed to rehabilitate.
To prevail on this basis, the Department must establish that as of the date of the filing of the termination petition, Cassandra had not achieved a requisite degree of personal rehabilitation. That level must be such as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in her son's life. Connecticut General Statutes17a-112 (c)(3)(B). "Personal rehabilitation as used in the statute CT Page 6353 refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203,504 A.2d 532 (1986), see also, In re Juvenile Appeal, 1 Conn. App. 463,477, 473 A.2d 795 (1984).
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In reHector L., 53 Conn. App. 359, 366-367, 730 A.2d 106 (1999). Because of this requirement that the court predict what may happen within a "reasonable time" after the filing of the termination petition, the court must consider not only Cassandra's conduct prior to the filing of those petitions, but also her conduct after that time. In this case, this was a period of only a few months.
This Court must conclude that as of the time of this petition, Cassandra had made no progress toward rehabilitation. Her lack of rehabilitation continued even after the filing of the termination petition. This Court finally concludes that the time still required for her to fully rehabilitate and to be able to care for any child reliably is indeterminate. Indeed there is little to suggest that such rehabilitation will ever occur. The Court therefore finds, from the clear and convincing evidence, that Cassandra cannot be rehabilitated as a parent of this child within the reasonably foreseeable future, consistent with Frederic's needs for permanency.
2. No Ongoing Parent — Child Relationship Between Respondent Mother andThis Child
The Department has also alleged that Frederic has no ongoing parent — child relationship with his biological mother. This is the type of relationship that would ordinarily develop as the result of a parent providing the child's daily physical, emotional, moral and educational need. The Department further alleges that the time required to establish such a relationship would be detrimental to Frederic's best interests. Connecticut General Statutes 17a-112 (c)(3)(D). Termination on this ground is inappropriate unless "the child has no present memories or feelings for the natural parent." In re Jessica B., 217 Conn. 459,586 A.2d 597 (1991). Alternatively, the Department must establish that even if a child has memories of the parent, "no positive emotional aspects of the relationship survive." In re Jessica B., 217 Conn. at 468-70.
"Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of a child." In re Luke G., CT Page 635440 Conn. Sup. 316, 323, 498 A.2d 1054 (1985); In re Migdalia M.,6 Conn. App. 195, 208-9, 504 A.2d 533 (1986). While the biological mother expressed an interest at trial in maintaining a relationship with Frederic, her efforts can best be described as too little too late.
The Department provided testimony from a variety of witnesses. Frederic was placed in foster care virtually at birth. He has been in her current home for nearly two years. This child has had little contact with his biological mother. Their interactions were more in the nature of friendly strangers rather than parent and child. Frederic has no feelings for his biological mother within the meaning of the statute. As stated by the Appellate Court, "We must conclude . . . that the phrase "feelings for the natural parent' refers to feelings of a positive nature." In re JuvenileAppeal, (84-6), 2 Conn. App. 705, 709, 483 A.2d 1101 (1984).
Having found that there is no parent — child relationship, the court must next decide whether to allow further time to develop such a relationship. The primary consideration is the best interests of the child. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home, under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, 458 U.S. 502, 513 (1982). Because this mother has had little contact with her child in nearly two years, and none of it has been substantial, to allow further time would be detrimental.
For the foregoing reasons, the court finds by clear and convincing evidence that Frederic has no ongoing parent — child relationship with Cassandra within the meaning of the applicable statutes.
3. Abandonment
The Department finally alleges that both parents abandoned their son. "Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [Rev. to 1995] § 17a-112 (b)(1) [now § 17a-112
(c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . ." In re John G., 56 Conn. App. 12, 20, 740 A.2d 496 (1999) (internal quotations omitted). CT Page 6355
Our statutes do not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. To prevail, a parent must maintain, on a continuing basis, a reasonable degree of interest in the welfare of his or her child. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. Turning first to the child's mother, Cassandra last saw her child in June 2000. She has ignored each and every one of this child's developmental needs, choosing instead to concentrate on her personal agenda. Her lack of interest and involvement is striking. There is no evidence she ever expressed love and affection for the child. She never expressed concern over the health, education and general well being of the child. Cassandra has never supplied necessary food, clothing, and medical care nor has she maintained an adequate domicile. There is no evidence that she ever furnished social and religious guidance. There is clear and convincing evidence that Cassandra has abandoned this child.
Respondent Father, Allan, presents a similar situation. Admittedly imprisonment alone does not constitute abandonment. Nevertheless, Allan is serving a twenty-five year sentence for a violent crime. This Court cannot ignore the voluntary illegal act that resulted in incarceration. The fact that the conviction has been appealed does not eliminate the fact that it is a final judgment, and must be viewed as such by this Court.[9] In the same vein, it does not excuse Allan's failure to contact the child while he was incarcerated. In re Deana E.,61 Conn. App. at 194. He had a moral obligation to contact his son and support his child, in any way possible, regardless of the actions of the Department. See In re Juvenile Appeal, 183 Conn. 11, 15,438 A.2d 801 (1981).
In essence, this Court is asked to decide whether Allan has made a "sufficient commitment to his parental responsibilities . . . whether he has done all he could reasonably do under the circumstances." Adoption ofKelsey S., 1 Cal.4th 816, 850 (1992) (emphasis in original). A parent's professed love is not enough. The court
 should consider all factors relevant to that CT Page 6356 determination. The father's conduct both before and after the child's birth must be considered. Once the father knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit. In particular, the father must demonstrate "a willingness himself to assume full custody of the child — not merely to block adoption by others." . . . A court should also consider the father's public acknowledgment of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child.
 Matter of Raquel Marie X., 76 N.Y.2d 387, 408, 559 N.Y.S.2d 855,559 N.E.2d 419 (1990) (emphasis in original; citations omitted).
In light of all relevant facts, it is evident that Allan's effort was minimal and sporadic. Although he belatedly expressed interest, Allan never assumed parental responsibility. He never sustained reasonable, continuing concern. He never assumed parental responsibilities. Allen's attempts to lay blame on the Department are unpersuasive. The Department established, by clear and convincing evidence, that Allen's actions constituted abandonment.
B. Required Findings
In the dispositional phase of this termination of parental rights, this Court must determine whether the Department has established, by clear and convincing evidence, that continuing Respondents' parental rights is not in the best interests of Frederick. The Court makes the following factual findings required by Connecticut General Statutes 17a-112 (e)
(1) Appropriate and timely services were provided by the Department to thefamily.
These services benefited the child. Cassandra failed to accept any of the services. Unfortunately. Allan's incarceration precluded his ability to accept most of the Department's services. In the few areas where the Department could assist, correspondence and administrative reviews, Allan's inactivity precluded meaningful communication.
(2) The court finds by clear and convincing evidence that the Departmentmade reasonable efforts to reunify the family.
Mother refused to participate in reunification efforts. Given CT Page 6357 Frederic's medical condition and his father's failure to acknowledge paternity, the Department efforts to reunify father and child, although minimal, were nevertheless reasonable.
(3) The terms of any applicable orders entered into and agreed to by anyindividual or agency and the extent of fulfillment of those obligations.
The court finds that reasonable court expectations were set for both parents. Neither made any effort to fulfill these basic requirements.
(4) The feelings and emotional ties of the child with respect to hisparents, any guardian of the person and any person who has exercisedphysical care, custody and control of the child for at least one year andwith whom the child has developed significant emotional ties.
Frederic has settled into his foster home. He is not attached to his biological parents, neither of who have ever been a presence in his life His foster mother has encouraged Frederic's bonding with maternal relatives. One of those individuals, an aunt, wishes to adopt this child. Her interactions with this young boy have been totally acceptable and loving.
(5) Finding regarding the age of the child.
Frederic was born July 1999 and is nearly two years old.
(6) Finding regarding efforts of the parents to adjust theircircumstances, conduct or conditions to make it in the best interests ofthe child to return him home in the foreseeable future and (A) the extentto which the parents have maintained contact with the child as part of aneffort to reunite the child with them, provided that the court may giveweight to incidental visitations, communications or contributions and (B)the maintenance of regular contact or communications with the guardian orother custodian of the child.
As detailed above, the court finds that these parents made no effort to change their lives to accommodate the care and nurturing of this child.
(7) Finding regarding the extent to which a parent has been preventedfrom maintaining a reasonable relationship with the child by theunreasonable act or conduct of the other parent of the child or theunreasonable act of any other person or by the economic circumstances ofthe parent.
No such conduct is noted. CT Page 6358
IV. Disposition
The court concludes, from the clear and convincing evidence, that there is no biological parent ready now or in the foreseeable future that will be able to care for Frederic. The court concludes, from the clear and convincing testimony, that it is in Frederic's best interests to have permanency and stability in his life. The court further finds that adoption by a family that understands and can accommodate his special needs is the avenue most likely to accomplish this result. The court also finds the testimony concerning Frederic's adoptability persuasive.
The court therefore orders that a termination of parental rights enter with respect to both biological parents. The court further orders that a permanency plan for Frederic be submitted within thirty days. A review plan for her shall be filed in accordance with state and federal law.
 __________________________ JULIA DiCOCCO DEWEY, JUDGE May 17, 2001