[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Regarding Termination of Parental Rights
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families (the department). The department is seeking to terminate the parental rights of Yvonne's biological parents, Marilee S. and Miquel E.
I. Procedural Background
On May 11, 1999 the department filed neglect petitions and sought an order of temporary custody alleging that Yvonne was suffering from physical injury and was in immediate danger from her physical surroundings. The department further alleged that Yvonne's mother could not provide the care required by this young child. At the time of the initial hearing, the identity of Yvonne's father was unknown. CT Page 9774
The Superior Court for Juvenile Matters in Waterbury sustained that emergency order. On December 1, 1999 that Court adjudged the child neglected and committed the child to the custody of the department. The Court subsequently extended that commitment.
On August 8, 2000 the department filed a petition to terminate the parental rights of both parents. The department has alleged that respondent mother has failed to rehabilitate such that she could assume a responsible position in her child's life. The department further alleged that there was no ongoing parent — child relationship between the biological parents and their child. That includes the allegation that both parents have abandoned Yvonne. The department amended the termination petition in October 2000 and named respondent father as a legal party.
Based on the facts indicated below, this Court grants the termination petition on the grounds 1) respondent mother has failed to rehabilitate; (2) there is no ongoing parent-child relationship between parents and this child; and 3) these parents abandoned their child. Connecticut General Statutes 17a-112 (c).
II. Facts
 A. Respondent Mother, Marilee S.
Marilee S., this child's biological mother, was born in Fajardo, Puerto Rico on August 7, 1976. She had six years of formal education. She has two children, the youngest of whom is Yvonne.
Marilee has difficulty both in sustaining relationships and in handling daily affairs. She also has a history of auditory hallucinations and substance abuse. She has not maintained stable housing and has no employment history. Although Marilee received disability income for depression, anxiety and potential schizophrenia, she has not addressed any of her mental health issues.
B. Respondent Father, Miquel E.
There is no available information concurring respondent father.
C. The Child, Yvonne S.
Yvonne S. was born on May 1999. She has been in foster care since birth, currently in a home with her biological sister. Both foster parents are involved in the child's life and openly displayed affection. CT Page 9775
III. Adjudicatory Findings
 A. Reasonable Reunification Efforts
In order to terminate parental rights, the Department must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . provided that this finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." Connecticut General Statutes17a-112 (c)(1). The Department does allege that these parents are unable or unwilling to benefit from such services. However in the present case no finding is necessary. At a prior hearing pursuant to Connecticut General Statutes 17a-110, there already was a finding that such efforts are not appropriate. In re Deana E., 61 Conn. App. 185, 184-5, ___ A.2d ___ (2000).
B. Statutory Grounds
In order to prevail in a non-consensual termination of parental rights, the Department must establish by clear and convincing evidence that there is a statutory basis for the termination. In re Michael R.,49 Conn. App. 510, 512, 714 A.2d 1279 (1998). The facts that a court can rely upon during this adjudicatory phase are statutorily limited to events preceding either the filing of the petition or its latest amendment. Connecticut Practice Book 33-3(a).
1. Respondent Mother's Failure to Rehabilitate
In 1999 this Court adjudged Yvonne neglected and entered court-ordered expectations. The department has alleged that respondent mother has failed to achieve the bulk of these mandated steps, and thus failed to rehabilitate.
To prevail on this basis, the department must establish that as of the date of the filing of the termination petition, the respondent parent had not achieved a requisite degree of personal rehabilitation. That level must be such as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in his or her daughter's life. Connecticut General Statutes 17a-112 (c)(3)(b). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M.,6 Conn. App. 194, 203, 504 A.2d 532 (1986), see also In re JuvenileCT Page 9776Appeal, 1 Conn. App. 463, 477, 473 A.2d 795 (1984).
The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167, 554 A.2d 722 (1989), In reHector L., 53 Conn. App. 359, 366-367, 730 A.2d 106 (1999). Because of this requirement that the court predict what may happen within a "reasonable time" after the filing of the termination petition, the court must consider not only the parent's conduct prior to the filing of those petitions, but also conduct after that time.
This Court must conclude that as of the time of this petition, Marilee S had not made significant progress toward rehabilitation.
Marilee has failed to complete most of the procedures recommended by the department in its efforts to reunify this family. She has rejected therapy and counseling. She failed to maintain adequate housing and legal income. She missed administrative case reviews. She did not visit her young child. She has never acknowledged the child's birthday. She ignored the child at Christmas and other holiday times. She has never sent any cards, gifts or letters. In short, she has done nothing to achieve a level of competency that would encourage reunification. Her lack of rehabilitation continued even after the filing of the termination petition. This Court finally concludes that the time still required for her to fully rehabilitate is indeterminate. Indeed there is little to suggest that such rehabilitation will ever occur. The Court therefore finds, from the clear and convincing evidence, that Marilee cannot be rehabilitated as a parent of this child within the reasonably foreseeable future, consistent with Yvonne's needs for permanency.
 2. No Ongoing Parent — Child Relationship Between Respondent Parents and This Child
The department has also alleged that Yvonne has no ongoing parent — child relationship with her biological parents. This is the type of relationship that would ordinarily develop as the result of a parent providing the child's daily physical, emotional, moral and educational need. The department further alleges that the time required to establish such a relationship would be detrimental to Yvonne's best interests. Connecticut General Statutes 17a-112©(3)(D). Termination on this ground is inappropriate unless "the child has no present memories or feelings for the natural parent." In re Jessica B., 217 Conn. 459,586 A.2d 597 (1991). Alternatively, the Department must establish that even if a child has memories of the parent, "no positive emotional aspects of the relationship survive." In re Jessica B., 217 Conn. at CT Page 9777 468-70.
"Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility' for the welfare of a child." In re Luke G.,40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985); In re Migdalia M.,6 Conn. App. 195, 208-9, 504 A.2d 533 (1986). Here the biological parents expressed no interest in maintaining a relationship with their daughter.
Having found that there is no parent — child relationship, the court must next decide whether to allow further time to develop such a relationship. The primary consideration is the best interests of the child.
"There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children'sServices, 458 U.S. 502, 513 (1982). Because these parents have had no contact with their child in over a year, and have shown no inclination to begin visits in the near future, to allow further time would be detrimental.
For the foregoing reasons, the court finds by clear and convincing evidence that Yvonne has no ongoing parent — child relationship with either parent within the meaning of the applicable statutes.
3. Abandonment
The department finally alleges that both parents abandoned their daughter. "Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes [Rev. to 1995] § 17a-112 (b)(1) [now § 17a-112 (c)(3)(A)] defines abandonment as the [failure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . ." In re John G., 56 Conn. App. 12, 20, 740 A.2d 496
(1999) (internal quotations omitted).
Our statutes do not contemplate a sporadic showing or the indicia of interest, concern or responsibility for the welfare of a child. To CT Page 9778 prevail, a parent must maintain, on a continuing basis, a reasonable degree of interest in the welfare of his or her child. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . . In re Kezia M.,33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993)." (Internal quotation marks omitted.)
The evidence produced at trial clearly established statutory abandonment. Turning first to the child's mother, Marilee has seldom seen her daughter. She completely ignored the child after April 2000. There is no evidence she ever expressed love and affection for the child. She never expressed genuine concern over the health, education and general well being of the child. She never supplied necessary food, clothing, and medical care nor has she maintained an adequate domicile. There is no evidence that she ever furnished social and religious guidance. There is clear and convincing evidence that Marilee has abandoned this child.
Respondent father has never had any contact with this child. The department established, by clear and convincing evidence, that his actions constituted abandonment.
C. Required Findings
In the second, dispositional phase of this termination of parental rights, this Court must determine whether the department has established, by clear and convincing evidence, that continuing respondents' parental rights is not in the best interests of the child. The Court makes the following factual findings required by Connecticut General Statutes 17a-112 (e)
 (1) Appropriate and timely services were provided by the Department to the family.
These services benefited the child and her parents. Unfortunately, both parents refused to exert the effort required to take advantage of these services.
 (2) The court finds by clear and convincing evidence that the Department made reasonable efforts to reunify the family.
Both parents refused to participate in reunification efforts. CT Page 9779
 (3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations.
The court finds that reasonable court expectations were set for both parents. Neither made any sustained effort to fulfill these basic requirements.
 (4) The feelings and emotional ties of the child with respect to her parents, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties.
Yvonne has settled into her foster home. She is not attached to her biological parents, neither of who has ever been a presence in her life. Her foster family has given Yvonne a safe, secure and happy environment. They are a true family unit in every sense of the word.
(5) Finding regarding the age of the child.
Yvonne was born May 1999 and is two years old.
 (6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return her home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child.
As detailed above, the court finds that these parents made no effort to change their lives to accommodate the care and nurturing of this child.
 (7) Finding regarding the extent to which parents have been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person or by the economic circumstances of the parent.
No such conduct is noted.
IV. Disposition
The court concludes, from the clear and convincing evidence, that there is no biological parent ready now or in the foreseeable future that will CT Page 9780 be able to care for Yvonne. The court concludes, from the clear and convincing testimony, that it is in Yvonne's best interests to have permanency and stability in her life. The court further finds that adoption by a family that understands and can accommodate her special needs is the avenue most likely to accomplish this result. The court also finds the testimony concerning Yvonne's adoptability persuasive.
The court therefore orders that a termination of parental rights enter with respect to both biological parents. The court further orders that a permanency plan for Yvonne be submitted within thirty days. A review plan for her shall be filed in accordance with state and federal law.
Julia DiCocco Dewey, Judge